[No. 45454.   En Banc.   December 21, 1978.]

HENRY M. THIRINGER, *Respondent,* v. AMERICAN
MOTORS INSURANCE COMPANY, *Appellant.*

*Lukins, Annis, Bastine, McKay & Van Marter, P.S.,* by *Robert G. Beaumier, Jr.,* and *Eugene I. Annis,* for appellant.

*Randall & Danskin,* by *Nancy E. Horgan,* for respondent.

ROSELLINI, J.—We are asked to determine the priorities, as between an insurer and its insured, in the proceeds of a settlement effected by the insured with the party responsible for his injuries.

At the time of the automobile accident in which the insured (respondent/cross–appellant) was injured, he carried a policy of insurance issued by the appellant (referred to hereafter as the insurer) which, in addition to other coverage, contained a provision for "Personal Injury Protection" (PIP). Under this coverage, in the event of an accident involving the insured's automobile, the insurer agreed to pay certain medical, hospital and income continuation benefits. The policy provided that if the company paid benefits under this coverage, it should be entitled to the proceeds of any settlement that might result from the exercise of the insured's right of recovery from any person responsible for the injury, to the extent that such settlement included any "expense, amount or payment for which such benefits were paid."

The policy also reserved to the insurer a right of subrogation and provided that the insured should do nothing to prejudice such right. An arbitration clause provided for resolution of any disputes as to the amount payable under the policy.[1]

The insured reported the accident to the insurer. Its employees told him that because the other driver had insurance, his PIP coverage was not available to him, and advised him to pursue his remedy against that party, who,

---

[1]The conditions of the PIP endorsement were:

"6. Trust Agreement. In the event of payment to any person of any benefits under this endorsement:

it is agreed, was solely responsible for the accident. This he proceeded to do with the assistance of counsel, and accepted a settlement of $15,000, this being the limit of the tort–feasor's liability insurance. A general release was given. The tort–feasor was a member of the armed forces, who had no other reachable assets and no prospect of acquiring any within the period of the statute of limitations.

After securing this payment, the insured, believing that the amount of his general damages exceeded the amount recovered, demanded the benefits payable under his PIP coverage. When the appellant refused to pay any part of them, this action was instituted, in which the insured sought a declaratory judgment and an order requiring the insurer to submit to arbitration the question of the amount of his general damages and the amount of PIP payable.

The court below, after hearing the evidence, determined that the settlement was reasonable and that the insurer's subrogation rights were not prejudiced by it. It held that

---

"(a) the Company shall be entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made to the extent the damages recovered include any expense, amount or payment for which such benefits were paid;

"(b) where the injured party or the insurer or both have incurred legal expenses in recovering payments which benefit both, whether incurred in an action for damages or otherwise, there shall be an equitable apportionment of such expenses;

"(c) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of any expense, amount or payment which is subject of claim made hereunder;

"(d) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;

"(e) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.

"7. Subrogation. In the event of any payment under this endorsement, the Company shall be entitled to reimbursement and subrogated to the extent of such payment, to all the rights of recovery therefor which the person to or on behalf of whom such payment is made may have against any person or organization, and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights." Automobile Personal Injury Protection Endorsement.

the proceeds of the settlement should be applied first toward the payment of the insured's general damages and then, if any excess remained, toward the payment of his special damages covered by the PIP provision. The principle upon which this holding was based was that the insured was entitled to be made whole, and that only after he had made a full recovery for his damages did the insurer's right of subrogation arise. Arbitration was ordered to determine the amount of the insured's damages and to distribute the proceeds of the settlement accordingly.

The court rejected a contention of the insured that the policy provisions and the flyer advertising the PIP coverage were unfair and misleading, in violation of the Consumer Protection Act, RCW 19.86.

Both parties have appealed.

It is first argued that, by settling with the tort-feasor for an amount less than his total damages and executing a general release, the insured destroyed the insurer's right of subrogation and consequently forfeited any right which he might have had to recover under the PIP coverage. Upon oral argument, however, the insurer's attorney acknowledged that the settlement exhausted the tort-feasor's assets, both present and prospective. That being the case, the insurer was not prejudiced by the settlement, having lost nothing thereby. The insured holds the proceeds to be equitably dispensed as the rights of the parties appear, and the insurer could not have obtained more had it paid the insured and pursued the tort-feasor directly as subrogee. The rule is that if an insurer has not been prejudiced by a settlement and release, it cannot deny recovery on the policy. 6A Appleman, *Insurance Law and Practice* § 4093, at 261 (rev. 1972). *See* 15 Blashfield, *Automobile Law and Practice* § 484.6 n.67 (3d ed. 1969).

Furthermore, the insurer may well be estopped to contend that its liability was terminated by the settlement, since it refused to make the payments provided in the policy (under the terms of which the right of subrogation was contingent upon such payment) and encouraged the insured

to pursue his remedy against the tort–feasor, offering no assistance in the pursuit. *See* 15 Blashfield, *supra* at § 484.10; 46 C.J.S. *Insurance* § 1209 (1946); 6A Appleman, *supra*; Annot., *Rights and remedies of insurer paying loss as against insured who has released or settled with third person responsible for loss,* 51 A.L.R.2d 697 (1957).

In addition, the policy quite reasonably contemplates that the insured may pursue his remedy against a third party, and the only restriction is that he must not do any act to prejudice the rights of the insurer. Since the losses covered by the PIP provision may represent only a minor portion of an insured's total damage, it would be patently unfair to require him to surrender his right of action against a third party in order to receive this payment. Also, it is unrealistic to expect that a third party will accept only a partial release when he settles a claim, under circumstances such as those presented here.

The trial court having correctly found that the insurer was not prejudiced by the settlement and release, there was no violation of the policy provisions.

The decisive issue before us concerns the allocation of the proceeds of the settlement, as between the insured and the insurer. It is the contention of the insurer that they should be allocated first to the special damages covered by the PIP provision or, in the alternative, prorated between the general damages and the PIP damages.

■ The general rule is that, while an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tort–feasor responsible for the damage, it can recover only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss. *St. Paul Fire & Marine Ins. Co. v. W.P. Rose Supply Co.,* 19 N.C. App. 302, 198 S.E.2d 482 (1973); *Propeck v. Farmers' Mut. Ins. Ass'n,* 65 S.W.2d 390 (Tex. Civ. App. 1933); 46 C.J.S. *Insurance* § 1209, at 155 (1946); 15 Blashfield, *Automobile Law and Practice* § 484.8, at 196 (rev. 1972 & Supp. 1977);

6A Appleman, *supra* at 259; 16 Couch, *Cyclopedia of Insurance Law* § 60:50 (R. Anderson, 2d ed. 1966).

This rule embodies a policy deemed socially desirable in this state, in that it fosters the adequate indemnification of innocent automobile accident victims. *See Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975).

We find nothing in the language of the policy to indicate that the parties agreed that a different principle would apply to this contract. It provides that, if payment under the PIP coverage is made to the insured, the insurer shall be reimbursed to the extent that the insured recovers such damages from a person legally responsible for the injury. It does not provide that, if the insured recovers less than his total damages from such party, the amount recovered shall be allocated first to those losses covered by the PIP endorsement and then to other damages suffered by the insured. Such a provision, were it included, would be obviously unfair, since the insured pays a premium for the PIP coverage and has a right to expect that the payments promised under this coverage will be available to him if the amount he is able to recover from other sources, after diligent effort, is less than his general damages.

We have examined the numerous cases cited by the parties. While all have some relevance, none involved the same circumstances as those presented here. Subrogation is an equitable doctrine, and an examination of the cases cited by both parties shows that courts, unless otherwise directed by statutory requirements, attempt to resolve each case upon a consideration of the equitable factors involved, guided by the principle that a party suffering compensable injury is entitled to be made whole but should not be allowed to duplicate his recovery. The insurer's interest in its right of subrogation is, of course, always a factor to be considered.

In *Metropolitan Life Ins. Co. v. Ritz,* 70 Wn.2d 317, 422 P.2d 780 (1967), cited by the insurer, an insurer had paid to the insureds the amount which it had contracted to pay for

medical expenses and had exacted from them an agreement to reimburse the company to the extent of any recovery of the expenses as the result of legal action or settlement. Thereafter they negotiated a settlement with their tort–feasor, giving a release of all claims. They resisted the insurer's claim for reimbursement upon the ground that the settlement was not intended to cover medical expenses. There was no contention that the settlement exhausted the tort–feasor's reachable assets, and it was agreed that the insureds could have excluded these expenses when they settled with the tort–feasor. Upon these facts, we held that since the insureds had knowingly deprived their insurer of its right of subrogation, they could not be heard to say that their settlement did not include payment of medical expenses. Since the facts showed that the rights of the insurer in that case were prejudiced by the settlement, it is not controlling here.

*Scales v. Skagit County Med. Bureau,* 6 Wn. App. 68, 491 P.2d 1338 (1971), is a case involving facts of greater similarity. There, the insurer had contracted to pay for certain medical and hospital expenses. The insured wife was injured in an automobile accident and secured a judgment for $40,000, of which $27,500 proved uncollectible. Suit was then brought against the insurer for the expenses covered by the policy. The Superior Court prorated the judgment between property damage and general and special damages for injuries. It determined that, after allocating a pro rata part of the actual recovery to the expenses covered by the policy, the company was obliged to pay approximately $5,000 under its policy, that amount being the difference between the amount actually recovered for such expenses and the agreed coverage. Only the insurer appealed and the Court of Appeals upheld the judgment, against a contention that the trial court was without power to make the apportionment because the contract contained no provision authorizing it. The case was rested upon the principle that where a contract is silent upon matters important to its performance, the trier of fact is permitted to determine

what is reasonable under the circumstances. Since the insureds did not appeal, the question of their right to be made whole was not considered.

The insured also cites cases decided by the Florida appellate courts, which approve equitable apportionment between insured and insurer. Such apportionment, however, is mandated by the Florida no–fault insurance statute, 18A Fla. Stat. Ann. § 627.736 (West), which makes insurance the primary fund available to the person injured in an automobile accident. *See Reyes v. Banks,* 292 So. 2d 39 (Fla. App. 1974). We have no comparable statute, and we are convinced that the more equitable approach, where policy provisions such as those before us are utilized, is to permit the insured to recoup his general damages from the tort–feasor before allowing subrogation, provided, of course, that in so doing he does not prejudice the rights of his insurer. Such a rule, we believe, accords more with the undertaking of the insurer and the reasonable expectations of the insured, than does a rule requiring proration of the recovery.

On his cross appeal the insured suggests that the PIP provision and the flyer which was sent to policyholders inviting their participation in PIP coverage was misleading, in violation of RCW 48.30.040. As we understand the argument, it is contingent upon the court's finding that the insurer reserved a right to make first claim upon the proceeds of the insurance or other assets of a person liable for an injury. Inasmuch as we do not find that intent expressed in the contract and do not accord the insurer that right, the cross appeal is moot. It appears, we note in passing, that the PIP provisions have been approved by the Insurance Commissioner.

Since we have concluded that the correct decision was rendered below, the amount of the insured's general damages is to be determined by arbitration.

The judgment is affirmed.

WRIGHT, C.J., HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., and COCHRAN, J. Pro Tem., concur.