[Nos. 52265-1, 52354-1.   En Banc.   June 11, 1987.]

GENEVIEVE KEENAN, *Respondent,* v. INDUSTRIAL INDEMNITY INSURANCE COMPANY OF THE NORTHWEST, *Appellant.*

INDUSTRIAL INDEMNITY INSURANCE COMPANY OF THE NORTHWEST, *Appellant,* v. GENEVIEVE KEENAN, *Respondent.*

*Reed, McClure, Moceri, Thonn & Moriarty,* by *Donald C. Harrison,* for appellant.

*Inslee, Best, Chapin, Doezie & Ryder, P.S.,* by *Thomas H. De Buys,* for respondent.

CALLOW, J.—An automobile insurer who had issued an insurance policy providing both personal injury protection (PIP) and underinsured motorist coverages seeks reimbursement of PIP benefits previously paid to the insured, pursuant to a reimbursement provision in the policy. At issue is whether this reimbursement provision is enforceable to the extent that it prevents the insured from receiving a double recovery for her damages. The trial court disallowed any reimbursement of PIP benefits. We accepted direct review and reverse.

On March 13, 1981, while driving her automobile plaintiff Genevieve Keenan was hit head–on by Buell Wood. She suffered severe injuries. The plaintiff was insured under a

single insurance policy issued by the defendant, Industrial Indemnity Insurance Company. She paid separate premiums for both PIP coverage and underinsured motorist coverage. Under her PIP coverage she was entitled to receive certain no–fault benefits, including up to $10,000 for medical and hospital expenses and up to $10,000 in income continuation (wage loss) benefits. The PIP portion of the policy also contained the following provision:

Our Right To Recover Payment

. . .

2. If we [Industrial Indemnity] make a payment under this [PIP] coverage and the person to or for whom payment is made recovers damages from another, that person shall reimburse us to the extent of our payment.

During the first year after the automobile collision, Industrial Indemnity paid the plaintiff a total of $9,999.90 under the PIP endorsement.

The tortfeasor, Wood, had a $25,000 liability policy. The plaintiff settled her claim against Wood for the full amount of the policy. The plaintiff then requested additional compensation from Industrial Indemnity under her underinsured motorist coverage, which had a limit of $35,000. An amount of compensation could not be agreed upon, so an arbitration was conducted pursuant to the terms of the policy to determine the plaintiff's total damages. The plaintiff submitted all of her claimed general and special damages to the arbitrators, including her claims for medical expenses, hospital expenses, and lost wages. The arbitrators, after consideration of the evidence presented, entered the following finding:

[T]he claimant, Genevieve Keenan, is legally entitled to collect damages from the owner or driver of the under–insured motor vehicle and [she] has been damaged in the total amount of $44,478.28.

The arbitrators, by agreement of the plaintiff and Industrial Indemnity, were not to consider any questions regarding offsets or reductions from this award.

Industrial Indemnity then tendered the plaintiff a check

for $9,478.38 in underinsured motorist benefits. This figure was obtained by deducting, from the total damages of $44,478.28, both the $25,000 the plaintiff had received from the tortfeasor's insurer and the $9,999.90 which the plaintiff had received in previous PIP benefits from Industrial Indemnity. The plaintiff did not object to the $25,000 offset. She did object to the additional $9,999.90 reduction, however, arguing that this offset to effect reimbursement of previous PIP payments was invalid. She sought a declaratory judgment on this question.

The trial court found that:

> Industrial Indemnity Insurance Company does not have the right to reduce or offset payments made under its Personal Injury Protection endorsement from the amounts due to [plaintiff] under its Underinsured Motorist Provision of the insurance contract between [plaintiff] and Industrial Indemnity Insurance Company.

The trial court also entered an order confirming the arbitrator's award and directing Industrial Indemnity to pay the plaintiff $19,478.28. We accepted direct review of both decisions, which have been consolidated for this appeal.

One issue is presented. Namely, may an automobile insurer offset amounts it previously paid its insured as PIP benefits against amounts payable to the insured under the underinsured motorist endorsement, by enforcing a clause in the insurance policy providing for reimbursement of the PIP benefits, where the insured will be fully compensated for all of her damages even with the offset? We hold that under these circumstances, the insurer is entitled to an offset.

Both parties agree that the PIP reimbursement clause here was triggered upon the plaintiff's recovery of $25,000 from the tortfeasor's liability insurer.[1] The question is

---

[1]The clause provides for reimbursement "to the extent of our [Industrial Indemnity's] payment" if the plaintiff "recovers *damages* from another". (Italics ours.) Because this latter clause is ambiguous, and because ambiguities in insurance policies are to be construed against the insurer, *Neer v. Fireman's Fund Am. Life Ins. Co.*, 103 Wn.2d 316, 321, 692 P.2d 830 (1985), we construe this clause as

whether the clause is enforceable. As Industrial Indemnity points out, enforcement of the PIP reimbursement is necessary to prevent the plaintiff from receiving a double recovery. The plaintiff suffered total damages of $44,478.28. With the PIP reimbursement, she will receive this amount as compensation for her injuries. Without the reimbursement (*i.e.*, if the clause is held unenforceable), she would receive $54,478.18.

█ Previous Washington cases have emphasized that offset or reimbursement clauses in insurance policies may be upheld if necessary to prevent the insured from receiving a double recovery. *Taxter v. Safeco Ins. Co. of Am.*, 44 Wn. App. 121, 721 P.2d 972 (1986) involved similar facts. The insurer sought to enforce a clause specifically authorizing an offset of previous PIP payments from amounts payable pursuant to the underinsured motorist coverage. The court stated:

> We conclude that *a PIP setoff against underinsured motorist coverage is valid* only *when the extent of the insured's damages are less than his policy limits.* Where the insured's damages exceed those limits, public policy dictates against any PIP offset.

(Italics ours.) *Taxter*, at 131.

We agree with this reasoning which is in accord with

---

requiring reimbursement only to the extent that the plaintiff recovered *PIP-attributable damages* from the tortfeasor's liability insurer.

In appellate argument, the possibility was raised that the plaintiff may not have actually suffered $9,999.90 in PIP-attributable damages even though Industrial Indemnity paid her this amount; the arbitration award was unsegregated and provided only that the plaintiff's total damages were $44,478.28. This possibility, however, is immaterial. If the plaintiff's PIP-attributable damages equalled or exceeded $9,999.90, then Industrial Indemnity was entitled to recover $9,999.90 under the reimbursement clause. If, instead, the plaintiff actually suffered less than $9,999.90 in PIP-attributable damages, then any excess PIP payments she previously received represent moneys to which she was not legally entitled. Industrial Indemnity, having paid these amounts pursuant to a mistake of fact, would be entitled to recover the excess payments under a restitution theory. 18 G. Couch *Insurance* § 74:191, at 691 (2d ed. 1983); Annot, *Right of Insurer Under Automobile Insurance Policy to Restitution of Payments Made Under Mistake*, 37 A.L.R.4th 1048, 1051 (1985); *Mid-Century Ins. Co. v. Brown*, 33 Wn. App. 291, 294, 654 P.2d 716 (1982).

*Thiringer v. American Motors Ins. Co.,* 91 Wn.2d 215, 588 P.2d 191 (1978) and *State Farm Mut. Auto. Ins. Co. v. Bafus,* 77 Wn.2d 720, 466 P.2d 159 (1970). In *Thiringer,* an insurer sought to reduce its PIP liability by the amount which the insured had received from the tortfeasor. We held such a reduction permissible, but only if the insured received full compensation for his loss. The key factor was the presence or absence of double recovery. *Thiringer,* at 219–20. In *State Farm,* an insured sought to stack her separate uninsured motorist coverages to recover more than the amount of her damages. We stated:

> No provisions in either contract of insurance, nor in the [former uninsured motorist] statute, have been pointed out which would warrant a stacking of liability, one policy upon the other, *to allow duplicate or overlapping awards for the same bodily injuries.*

(Italics ours.) *State Farm,* at 725. Only where there was no possibility of double recovery have offset or reimbursement clauses similar to Industrial Indemnity's been held unenforceable. *See United Servs. Auto. Ass'n v. Winbeck,* 30 Wn. App. 769, 637 P.2d 996 (1981); *Nationwide Mut. Ins. Co. v. Kelleher,* 22 Wn. App. 712, 591 P.2d 859 (1979); *Finney v. Farmers Ins. Co.,* 21 Wn. App. 601, 586 P.2d 519 (1978), *aff'd,* 92 Wn.2d 748, 600 P.2d 1272 (1979).

Other jurisdictions have allowed PIP (or similar no–fault benefit) offsets from uninsured or underinsured motorist benefits to avoid double recovery for the same damages. This result follows whether the insurance policy itself provides for such an offset, *Tucci v. State Farm Ins. Co.,* 503 Pa. 447, 469 A.2d 1025 (1983); *Glidden v. Farmers Auto. Ins. Ass'n,* 57 Ill. 2d 330, 312 N.E.2d 247 (1974); *Bradley v. Mid–Century Ins. Co.,* 409 Mich. 1, 294 N.W.2d 141 (1980), or whether the offset is authorized by statute. *Hartford Accident & Indem. Co. v. Lackore,* 408 So. 2d 1040 (Fla. 1982); *State Farm Mut. Auto. Ins. Co. v. Fletcher,* 578 S.W.2d 41 (Ky. 1979); *Bauder v. Farmers Ins. Co.,* 76 Or. App. 41, 707 P.2d 1296 (1985); *Staten v. State Farm Mut. Auto. Ins. Co.,* 94 Nev. 283, 579 P.2d 766 (1978); *North-*

*western Mut. Ins. Co. v. Rhodes,* 238 Cal. App. 2d 64, 47 Cal. Rptr. 467 (1965); *Smith v. Doe,* 176 Ga. App. 711, 337 S.E.2d 367 (1985). *See also Moore v. Beacon Ins. Co.,* 54 N.C. App. 669, 284 S.E.2d 136 (1981) (offset permitted on equitable grounds to prevent unjust enrichment). We find the cases to the contrary unpersuasive. *See Grange Mut. Cas. Co. v. Lindsey,* 22 Ohio St. 3d 153, 489 N.E.2d 281 (1986); *Newton v. Nationwide Mut. Fire Ins. Co.,* 594 P.2d 1042 (Colo. 1979); *Van Tassel v. Horace Mann Mut. Ins. Co.,* 296 Minn. 181, 207 N.W.2d 348 (1973). The remaining cases upon which the plaintiff relies did not involve the possibility of double recovery or such was not discussed.

The plaintiff nonetheless contends that the PIP reimbursement clause here is unenforceable because it (1) reduces the statutorily mandated underinsured motorist coverage to which she is entitled, in violation of RCW 48.22.030; (2) does not provide her recovery on the coverages for which she paid two premiums; and (3) violates her "reasonable expectations" under the policy. We disagree.

■ We turn to the underinsured motorist statute, RCW 48.22.030. That statute provides in part:

> (2) No new policy or renewal of an existing policy insuring against loss resulting from liability . . . shall be issued . . . unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles . . .
>
> (3) . . . [C]overage required under subsection (2) of this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage . . .

The statutory purpose is to allow an injured party to recover those damages he or she would have received had the responsible party maintained adequate liability insurance. *See Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 531, 707 P.2d 125 (1985); *Finney v. Farmers Ins. Co.,* 92 Wn.2d 748, 751, 600 P.2d 1272 (1979); *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 335, 494 P.2d 479

(1972). The injured party is not entitled to be put in a better position, by virtue of being struck by an underinsured motorist, than she would be had she been struck by a fully insured motorist. Yet that is what the plaintiff asks us to read into the statute. Here, if the tortfeasor had been fully insured, the plaintiff would have recovered $44,478.28 from the tortfeasor's liability insurer, and Industrial Indemnity would have been entitled to a reimbursement of the $9,999.90 it had previously paid the plaintiff pursuant to the PIP provision of the policy. The plaintiff's total recovery would thus equal her damages—$44,478.28. The plaintiff asserts that because she was struck instead by an underinsured motorist, she is entitled to recover a total of $54,478.18. Nothing in the underinsured motorist statute supports such a result.

The plaintiff contends that *Britton* supports her position. *Britton* is distinguishable. There, we held that an insurer could not offset amounts which the insured had received in government disability benefits from the amount otherwise payable under the insurance policy's underinsured motorist endorsement. Our holding emphasized that because the disability benefits were paid pursuant to a State law (*i.e.,* the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act), they were a direct entitlement triggered by the accident and a specific statute would be necessary to authorize an offset of those benefits. *Britton,* at 532. We decline to extend *Britton* to cases such as this, where the offset or reimbursement involves contractually provided PIP benefits and the purpose is to avoid a double recovery.

Next, the plaintiff points out that she paid two separate premiums for both PIP and underinsured motorist coverage. She asserts that if she is denied full recovery under both coverages through the enforcement of the reimbursement clause, Industrial Indemnity will receive a "windfall" because it will have collected premiums under two coverages and paid out benefits under only one. This argument misconstrues the nature of the protection plaintiff con-

tracted for when she purchased her insurance policy.

PIP coverage and underinsured motorist coverage protect against two different risks. The PIP coverage guaranteed payment of certain special damages following an automobile accident, regardless of whether the insured or the other driver was at fault. The underinsured motorist coverage, on the other hand, guaranteed payment of both special and general damages, but only if the other driver was at fault. The two coverages overlap at one point—payment of certain special damages when the other driver was at fault. Only at this point does the PIP reimbursement clause operate to deny plaintiff recovery under both coverages. Thus, she still receives full recovery for all of her damages. Such a result does not afford Industrial Indemnity a windfall. *See Bradley v. Mid–Century Ins. Co.,* 409 Mich. 1, 62–63, 294 N.W.2d 141 (1980).

Finally, the plaintiff contends that allowing the PIP reimbursement defeats her "reasonable expectations" under the policy. We have not adopted a "reasonable expectations" doctrine with respect to insurance policies. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 485, 687 P.2d 1139 (1984); *Ryan v. Harrison,* 40 Wn. App. 395, 399–400, 699 P.2d 230, *review denied,* 104 Wn.2d 1003 (1985). Furthermore, the doctrine would apply only to resolve an ambiguity concerning the extent of insurance coverage. *State Farm.* Here, the policy expressly provided for a reimbursement of PIP benefits to Industrial Indemnity. We enforce that provision.

The judgment of the trial court is reversed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.

DORE, J. (concurring)—I agree with the majority that under the insurance policy Keenan had with Industrial Indemnity Insurance Company she must reimburse Industrial Indemnity for the amount she had previously received as personal injury protection benefits. To do otherwise

would contradict the express language in her insurance policy. I write separately, however, to point out what I believe is an inherent inequity in this type of policy.

The purpose of an insurance policy is to make the insured whole in the event that a covered peril occurs. Therefore, for example, insurance companies may not offset recoveries under the underinsured part of an insurance policy by the recovery an injured insured received from the personal injury protection section of that policy if the offset prevents the insured from being made whole. *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978). Similarly, once an insured has been made whole, offset provisions in the policy may be enforced to prevent the insured's receiving a double recovery. *Taxter v. Safeco Ins. Co. of Am.*, 44 Wn. App. 121, 721 P.2d 972 (1986).

This central tenet of insurance law, that an insured should be made whole in the event of a covered accident, I believe has not occurred in the case before us. Keenan has already agreed to give up certain valuable rights to Industrial Indemnity by agreeing to its insurance policy: the right to control the settlement hearings and negotiations as well as the right to keep certain medical records confidential. In return, Keenan has the expectation that, as long as her damages are within the policy limits, she will suffer no out–of–pocket expenses. Because this case went to arbitration, however, with the consequential costs to Keenan to pay for an attorney, this expectation was not met. I believe this is neither fair nor equitable.

This type of situation, in which a party is forced to incur legal expenses when the general principle of the particular legal area is to avoid such costs, is not unique. Workers' compensation law is designed to compensate employees who are injured on the job without requiring them to incur any legal expenses. Nevertheless, there are situations in which an injured worker must hire an attorney to receive the proper recovery. For example, a worker may sue a third party responsible for his or her injuries. However, by statute, the worker does not bear the costs of this litigation

alone. To the extent the worker recovers from the third party, he or she is entitled to a proportionate reimbursement for the legal costs expended in making that recovery. RCW 51.24.060(1)(a).

I believe that the same principle should apply to insurance cases. To the extent that an insured must hire an attorney and incur additional legal costs, the insured should receive a proportionate reimbursement of those fees equal to the proportion of the additional amount of recovery received. This result would more adequately guarantee that the insured would be made whole in the event that arbitration was required.