931 P.2d 911 (1997)
85 Wash.App. 34
Betty M. KOHFELD, Appellant,
v.
UNITED PACIFIC INSURANCE COMPANY, Respondent.
No. 36824-9-I.
Court of Appeals of Washington, Division 1.
Decided January 21, 1997.
Publication Ordered February 24, 1997.
*912 Seth W. Morrison, Oles, Morrison & Rinker, Seattle, for Appellant.
Michael A. Patterson, Lee, Smart, Cook, Martin & Patterson, P.S., Inc., Seattle, Jennifer D. Bucher, Garvey, Schubert & Barer, Seattle, for Respondent.
KENNEDY, Acting Chief Judge.
Betty Kohfeld appeals the trial court's entry of judgment in favor of United Pacific Insurance Company and the subsequent denial of her motion for a new trial. Ms. Kohfeld contends that the trial court erred: (1) in permitting United Pacific to recover in subrogation the personal injury protection payment previously made to her; (2) in denying her motion for a new trial; and (3) in awarding United Pacific costs. Finding no error, we affirm.

*913 FACTS
On May 1, 1989, Betty Kohfeld was injured in automobile accident. She was taken by ambulance to Virginia Mason Hospital where she was treated for a cervical strain and a contusion to her forehead. After approximately an hour of observation, Ms. Kohfeld was released and returned home to rest.
Two days later, on May 3, 1989, Ms. Kohfeld went outside onto her deck to sit in the sun when she began to feel lightheaded. Although she reached for the railing to steady herself, she was unable to hold onto it and fell to the floor. She was again admitted to Virginia Mason Hospital where she was treated for a fracture of her left shoulder.
Sometime after she was treated for her shoulder fracture, Ms. Kohfeld brought an action against Roy Sandford, the driver who was determined to have caused the May 1, 1989, automobile accident. She eventually settled with Sandford for $180,000, well within his liability policy limits of $250,000. Ms. Kohfeld thereafter filed a complaint against her automobile insurer, United Pacific Insurance Company, to compel arbitration of her Underinsured Motorists (UIM) claim. Following a hearing conducted in January of 1994, the arbitrators issued a decision valuing Ms. Kohfeld's claim at $464,000.
On March 14, 1994, United Pacific moved to offset from Ms. Kohfeld's UIM arbitration award the full amount of Sandford's policy limits as well as payments made under Ms. Kohfeld's Personal Injury Protection (PIP) Endorsement. Judge Sharon Armstrong denied United Pacific's motion, holding that it would be permitted to offset only the $180,000 actually paid by Sandford's insurer, together with the PIP payments made to Ms. Kohfeld.
Dissatisfied with the arbitrators' decision, Ms. Kohfeld filed a demand for a trial de novo on March 31, 1994. Her claims were tried to a jury commencing on January 18, 1995.
The primary issue at trial was whether Ms. Kohfeld's May 3, 1989, fall was a proximate result of the automobile accident on May 1, 1989. The parties presented conflicting expert testimony on the cause of the fall. In support of her claim that the fall was the result of injuries sustained during the accident, Ms. Kohfeld presented the testimony of Dr. Laird Patterson and Dr. Alan Langman. Dr. Patterson expressed the opinion that Ms. Kohfeld's head trauma suffered during the accident and the resultant post-concussion syndrome were directly related to her fall on the deck. Similarly, Dr. Langman testified that, more probably than not, the automobile accident resulted in Ms. Kohfeld's dizziness leading, in turn, to her fall.
United Pacific selected Dr. Owen Black, a physician specializing in otology and neurotology, to conduct an independent examination of Ms. Kohfeld. Dr. Black examined her twice. The first examination occurred in December of 1992, approximately two and a half years after the accident; the second occurred two years later, in December of 1994. Dr. Black testified that in 1992, after his initial examination of Ms. Kohfeld, he reached the following conclusion:
I thought she had an inner ear concussion that could be related to the motor vehicle accident that she described in May. I think it was 1989. Yes.
If she had an inner ear concussion syndrome, it was possibly related to that event. But it could also have been related to the fall that she had.
Report of Proceedings at 709-10. When asked if he could "put a label" on his 1992 diagnosis, Dr. Black stated that he thought at that time that Ms. Kohfeld suffered from a benign proximal position establishing vertigo (BPPN), resulting from trauma.
Dr. Black testified, however, that his diagnosis changed following his examination of Ms. Kohfeld in 1994. Although he administered the same tests in 1994 that he had administered in 1992, Ms. Kohfeld's performance deteriorated substantially. Moreover, Dr. Black learned that Ms. Kohfeld had not responded to physical therapy. Based primarily on Ms. Kohfeld's test results and her lack of improvement following physical therapy, Dr. Black concluded that she suffered from degenerative BPPN unrelated to the automobile accident, rather than traumatic BPPN stemming from the accident.
*914 During cross examination, counsel for Ms. Kohfeld noted that another expert, Dr. John Epley, had examined Ms. Kohfeld twice but failed to discover any indication of BPPN. Dr. Black explained the discrepancy between his testimony and that of Dr. Epley by testifying that BPPN is not easy to detect, and can be missed entirely if the examination is not timed carefully.
United Pacific also presented the testimony of Dr. Paul Lees-Haley, a psychologist who specializes in the evaluation and treatment of trauma victims. After reviewing the test data and Ms. Kohfeld's medical records, Dr. Lees-Haley testified that it was his opinion that Ms. Kohfeld did not suffer from a traumatic brain injury. Dr. Lees-Haley did not, however, conduct an independent examination of Ms. Kohfeld.
At the conclusion of the nine day trial, the jury determined that Ms. Kohfeld sustained damages totaling $5,820. Noting that Ms. Kohfeld's jury award was less than the amount she recovered in settlement from the at-fault driver, the trial court held that United Pacific was entitled to recover in subrogation the $10,500 it had paid to Ms. Kohfeld under her PIP endorsement. Based on the entire case, the court found that United Pacific was the prevailing party and accordingly entered judgment and an award of costs in its favor.
On March 27, 1995, Ms. Kohfeld moved for a new trial under CR 59 and 62, arguing that the damages were so inadequate as to indicate that the verdict must have been the result of passion or prejudice, that there was no evidence or reasonable inference from the evidence to justify the verdict, and that substantial justice had not been done. The trial court denied Ms. Kohfeld's motion on May 18, 1995, and this timely appeal followed.

DISCUSSION
I. Motion for New Trial
Ms. Kohfeld first contends that the trial court erred in denying her motion for a new trial under CR 59(a)(7) and (9), arguing that there is no evidence or reasonable inference from the evidence to justify the verdict, and that she has been deprived of substantial justice.
CR 59(a) sets forth the grounds upon which a trial court may grant a motion for a new trial. The rule provides, in pertinent part:
The verdict or other decision may be vacated and a new trial granted to all or any of the parties and on all or part of the issues when such issues are clearly and fairly separable and distinct, on the motion of the party aggrieved for any one of the following causes materially affecting the substantial rights of such parties:
. . . .
(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;
. . . .
(9) That substantial justice has not been done.
CR 59(a).
The grant or denial of a motion for a new trial is a matter within the trial court's discretion and will not be disturbed on appeal absent a showing of a manifest abuse of that discretion. Detrick v. Garretson Packing Co., 73 Wash.2d 804, 812, 440 P.2d 834 (1968); Kramer v. J.I. Case Mfg. Co., 62 Wash.App. 544, 561, 815 P.2d 798 (1991) (citing Lockwood v. A C & S, Inc., 44 Wash.App. 330, 363, 722 P.2d 826 (1986), aff'd, 109 Wash.2d 235, 744 P.2d 605 (1987)). A trial court abuses its discretion when its decision is manifestly unreasonable, or based on untenable grounds or reasons. Kleyer v. Harborview Med. Ctr., 76 Wash.App. 542, 545, 887 P.2d 468 (1995); Richards v. Overlake Hosp. Med. Ctr., 59 Wash.App. 266, 271, 796 P.2d 737 (1990), review denied, 116 Wash.2d 1014, 807 P.2d 883 (1991).
The grant of a motion for a new trial is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, the court can say, as a matter of law, that there is no substantial evidence or reasonable inferences to sustain the verdict for the nonmoving party. Hizey v. Carpenter, 119 Wash.2d 251, 271-72, 830 P.2d 646 (1992); Lockwood, 44 Wash.App. at 353, 722 *915 P.2d 826. The requirement of substantial evidence necessitates that the evidence be such that it would convince an unprejudiced, thinking mind of the truth of a declared premise. In re Way, 79 Wash.App. 184, 191, 901 P.2d 349 (1995), review denied, 128 Wash.2d 1014, 911 P.2d 1343 (1996) (quoting Industrial Indem. Co. v. Kallevig, 114 Wash.2d 907, 915-16, 792 P.2d 520 (1990)). Our Supreme Court has cautioned that the "granting of new trials for the lack of substantial justice should be relatively rare, especially since [CR 59(a)] gives eight other broad grounds for granting new trials." Knecht v. Marzano, 65 Wash.2d 290, 297, 396 P.2d 782 (1964).
Quoting numerous excerpts from Dr. Black's testimony, Ms. Kohfeld contends that given his "contradictory and conflicting opinions," Dr. Black impeached his own reliability to such an extent that his testimony no longer constituted substantial evidence supporting the jury's verdict. Brief of Appellant at 27. In particular, Ms. Kohfeld asserts that Dr. Black's testimony was "self-impeaching" because he possessed the "same information" about her condition in 1992 as in 1994, and if the information failed to support a diagnosis of traumatic BPPN in 1994, it could not have supported his initial diagnosis of traumatic BPPN in 1992. See Brief of Appellant at 22-23.
Neither the record nor Washington law supports Ms. Kohfeld's argument. First, contrary to Ms. Kohfeld's assertions, the record indicates that Dr. Black's 1994 diagnosis was not based on the "same information" available to him in 1992. When he examined Ms. Kohfeld in 1994, Dr. Black discovered that she had not responded to physical therapy. Because 99.99% of patients with traumatic BPPN benefit from physical therapy, Ms. Kohfeld's lack of improvement prompted Dr. Black to investigate other potential causes of her ailments.[1] Moreover, although Dr. Black administered the same tests in 1994 that he had administered in 1992, Ms. Kohfeld's performance had deteriorated substantially by 1994. Dr. Black testified that Ms. Kohfeld's 1994 test results led him to believe that she was generating the movements herself, rather than demonstrating a problem with her inner ear. This was indicative of degenerative BPPN. Thus, based primarily on Ms. Kohfeld's 1994 test results and her lack of improvement following physical therapyinformation unavailable to the doctor or anyone else in 1992 Dr. Black changed his diagnosis from one of traumatic BPPN to one of degenerative BPPN unrelated to the automobile accident.
Second, Ms. Kohfeld's argument is based on a challenge to Dr. Black's credibility and reliability. It is the function of the jury, however, to evaluate the credibility of witnesses. Stiley v. Block, 130 Wash.2d 486, 925 P.2d 194 (1996) (quoting State v. Dietrich, 75 Wash.2d 676, 677-78, 453 P.2d 654 (1969)). Implicit within the jury's $5,820 verdict is its determination that Dr. Black's testimony was credible. It is within the province of the jury to accept or reject, in whole or in part, an expert's opinion, and this court will not second-guess the jury's credibility determinations. See Group Health Co-op. v. Department of Rev., 106 Wash.2d 391, 399, 722 P.2d 787 (1986); Burnside v. Simpson Paper Co., 66 Wash.App. 510, 527, 832 P.2d 537 (1992), aff'd, 123 Wash.2d 93, 864 P.2d 937 (1994).[2]
Moreover, although she asserts no discovery violations or prejudice resulting from surprise, Ms. Kohfeld appears to suggest that an expert witness should be precluded *916 from changing his or her opinion in the face of changing facts. She cites no authority for this proposition. We believe none exists.
Although the evidence presented as to the cause of Ms. Kohfeld's fall was conflicting, the jury was entitled to accept or reject the various experts' opinions. Group Health, 106 Wash.2d at 399, 722 P.2d 787. Viewing the evidence in the light most favorable to United Pacific, we conclude, in light of Dr. Black's testimony, that the evidence was such that it would convince an unprejudiced, thinking mind that Ms. Kohfeld's fall was caused by a condition unrelated to the automobile accident. Thus, because there was substantial evidence or reasonable inferences to sustain the verdict, we affirm the trial court's denial of Ms. Kohfeld's motion for a new trial.
II. Recovery of PIP Payments
Under Ms. Kohfeld's PIP Endorsement, United Pacific agreed to pay up to $10,000 for "loss and expenses incurred because of bodily injury caused by an auto accident," including medical and hospital benefits, income continuation benefits, and loss of services benefits. Clerk's Papers at 187. Following the automobile accident and Ms. Kohfeld's fall in May of 1989, United Pacific in fact paid Ms. Kohfeld $10,500 under the PIP Endorsement. The Endorsement, however, contains a reimbursement clause in United Pacific's favor which provides, in pertinent part:
4. OUR RIGHT TO RECOVER PAYMENT
. . . .
(b) If we make a payment under this endorsement and the person to or for whom payment is made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment.
Under paragraph (a) and (b), we will not exercise our right of recovery if doing so reduces the covered person's payments, from all sources, below the loss and expenses incurred.
Clerk's Papers at 190.
Noting that Ms. Kohfeld's jury award was less than the amount she recovered in settlement from the at-fault driver, the trial court held that United Pacific was entitled to recover in subrogation the $10,500 it had paid to Ms. Kohfeld under the PIP Endorsement. Ms. Kohfeld contends that because the valuation of her case against Sandford was set at only $5,820, and because her loss and expenses in these proceedings "far exceed" that amount, the trial court erred in permitting United Pacific to recover in subrogation its PIP payment. We reject Ms. Kohfeld's contention.
The general rule is that, although an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tortfeasor responsible for the damage, it can recover only the excess remaining after the insured is fully compensated for his or her loss. Thiringer v. American Motors Ins. Co., 91 Wash.2d 215, 219, 588 P.2d 191 (1978); see also Keenan v. Industrial Indem. Ins. Co., 108 Wash.2d 314, 738 P.2d 270 (1987); Price v. Farmers Ins. Co., 82 Wash.App. 20, 916 P.2d 949 (1996). The rule incorporates the general principles of equitable subrogation, as recently articulated by this court:
These principles developed to prevent the unjust enrichment of either the tortfeasor whose debt is paid by the insurer or the tort victim who recovers from both the insurer and the tortfeasor. Generally, subrogation allows the insurer to be substituted to the rights of the insured and pursue recovery directly from the tortfeasor or, when the insured recovers from the tortfeasor, to be reimbursed from that recovery. In equity, the insurer's right to recover its subrogation interest is limited, however, to "the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss."
Paulsen v. Department of Social & Health Servs., 78 Wash.App. 665, 668, 898 P.2d 353 (1995), review denied, 128 Wash.2d 1010, 910 *917 P.2d 481 (1996) (citations omitted) (quoting Thiringer, 91 Wash.2d at 219, 588 P.2d 191).
The Supreme Court applied the above principles in Thiringer. In that case, an insurer sought to reduce its PIP liability by the amount which the insured had received from the tortfeasor. The Court held that such a reduction was permissible, but only to the extent that the insured received full compensation for the loss. The Court emphasized that it was guided by the principle that "a party suffering compensable injury is entitled to be made whole but should not be allowed to duplicate his recovery." Thiringer, 91 Wash.2d at 220, 588 P.2d 191 (emphasis added). See also Keenan, 108 Wash.2d at 314, 738 P.2d 270 (holding that, through enforcement of a reimbursement clause, an insurer may offset amounts previously paid to an insured under a PIP endorsement against amounts payable to the insured under a UIM endorsement, when the insured will be fully compensated for all damages even with the offset).
In the present case, the jury determined that Ms. Kohfeld's damages arising from the automobile accident totaled $5,820. Ms. Kohfeld, however, recovered $180,000 in her settlement with the at-fault driver. By permitting United Pacific to enforce the reimbursement clause in Ms. Kohfeld's PIP Endorsement, Ms. Kohfeld will be left with approximately $170,000an amount that more than fully compensates her for her damages. Thus, under Thiringer and Keenan, and to avoid duplicate recovery by Ms. Kohfeld, we hold that United Pacific is entitled to recover in subrogation the PIP payment made to Ms. Kohfeld.[3]
Although Ms. Kohfeld argues that any excess of the settlement beyond the $5,820 jury award constitutes payment from a collateral source not subject to subrogation by United Pacific, her argument is without merit. First, the argument ignores express language in the PIP Endorsement, which permits United Pacific to recover PIP payments unless the recovery "reduces the covered person's payments, from all sources, below the loss and expenses incurred." Clerk's Papers at 190 (emphasis added). Second, we conclude that Ms. Kohfeld's reliance on Allstate Ins. Co. v. Dejbod[4] is misplaced, in that the language quoted in Dejbod is dicta, and the Supreme Court's opinions in Thiringer and Keenan control the issues raised.
III. Award of Costs
The trial court awarded United Pacific costs of $1,452. United Pacific contends that the award of costs in its favor was proper because, given that Ms. Kohfeld did not improve her position at trial, she was not the prevailing party within the meaning of RCW 4.84.010. Ms. Kohfeld does not appear to challenge United Pacific's assertion that she was not the prevailing party at trial. Instead, she argues that, regardless of who is the prevailing party, costs are not properly allowed in a UIM loss determination case.
Ms. Kohfeld cites Kenworthy v. Pennsylvania Gen. Ins. Co., 113 Wash.2d 309, 779 P.2d 257 (1989) in support of her assertion. In Kenworthy, our Supreme Court held that a clause in a UIM policy requiring a claimant to pay costs of arbitration materially diluted the coverage mandated by RCW 48.22.030(3) and was thus void. Kenworthy, 113 Wash.2d at 314-15, 779 P.2d 257. Ms. Kohfeld contends that the same reasoning applies to preclude the award of costs following a trial de novo. We disagree. In rejecting the insurers' argument in Kenworthy that arbitration costs are analogous to costs that a claimant might otherwise incur in effectuating coverage, the Supreme Court explained: "The critical and controlling distinction, however, is between those expenses that the claimant voluntarily incurs and those required by the policy in order for the claimant *918 to recover by arbitration." Kenworthy, 113 Wash.2d at 315, 779 P.2d 257 (emphasis added).
The same distinction is fatal to Ms. Kohfeld's argument. Although she could not be required to contribute to the costs of arbitration under the rule set forth in Kenworthy, when she demanded a trial de novo Ms. Kohfeld voluntarily risked incurring expenses beyond those required by the policy in order for her to recover by arbitration. Because Ms. Kohfeld voluntarily incurred trial expenses, nothing in Kenworthy precludes the award of costs under RCW 4.84.060.
Because we affirm the trial court's decisions, we need not address United Pacific's alternative assignment of error to the court's denial of its motion for setoff in computing the arbitration award.
Affirmed.
GROSSE and AGID, JJ., concur.
NOTES
[1] Dr. Black was not alone in his concern over Ms. Kohfeld's lack of improvement. Dr. Langman, one of Ms. Kohfeld's expert witnesses, similarly testified that her lack of improvement caused him to question whether he was "missing something" in his original diagnosis. See Report of Proceedings at 454-55.
[2] Ms. Kohfeld also attempts to call into question Dr. Black's credibility by suggesting an inconsistency between the report submitted by his bioengineer and the diagnosis he eventually reached. The record indicates, however, that no such inconsistency existed:

"[The bioengineer] states the Hallpike test was bilaterally normal, showing no evidence for BPPV syndrome at the time of testing. No nystagmus or symptoms provoked by Hallpike maneuver. BPPV, benign process vertigo.
"And I agree that she doesn't have that. What she has is degenerative BPPN, benign positional nystagmus." Report of Proceedings at 740.
[3] In her argument, Ms. Kohfeld appears to suggest that there is a difference between her "damages" and the amount of her "loss and expenses." This suggestion is without merit. The PIP Endorsement provides that United Pacific will pay for "loss and expenses incurred because of bodily injury caused by an auto accident". Clerk's Papers at 187. At the conclusion of her trial, the jury determined that Ms. Kohfeld's loss and expenses arising from the accident, her damages, totaled $5,820. Thus, Ms. Kohfeld's loss and expenses and her damages are one in the same.
[4] 63 Wash.App. 278, 818 P.2d 608 (1991).