FIREMAN'S FUND INSURANCE COMPANY, a California corporation, Plaintiff–Appellant–Cross–Appellee,

v.

HOLLAND AMERICA LINE–WEST-OURS, INC., a Washington corporation, Defendant–Appellee–Cross–Appellant.

Nos. 00–35059, 00–35111.

D.C. No. CV–99–00561–TSZ.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 2001.

Decided Jan. 4, 2002.

McKeown, Circuit Judge, dissented in part and filed opinion.

Before B. FLETCHER, McKEOWN, and TALLMAN, Circuit Judges.

MEMORANDUM*

Fireman's Fund Insurance Company ("Fireman's Fund") sought a declaratory judgment to establish the amount due its insured under a business interruption policy. It now appeals the district court's summary judgment in favor of its insured, Holland America Cruise Lines ("Holland America"). The district court awarded Holland America $1,083,383.25, but denied its request for attorneys' fees. Holland America cross-appeals the district court's denial of its request for attorneys' fees. We have jurisdiction under 28 U.S.C. § 1291, and we reverse in part and affirm in part.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9TH CIR. R. 36–3.

On January 20, 1993, a major storm caused Holland America's centralized nationwide reservation facility in Seattle to lose power from approximately 11:00 a.m. through 4:30 a.m. the following day. Because its computer was down, Holland America's agents were unable to book any reservations and instead instructed callers to call back at another time.

Holland America maintained a business interruption insurance policy that required Fireman's Fund to pay 75 percent of covered losses less a $100,000 deductible. The insurer invoked an arbitration clause to have "Appraisers" establish the amount of the loss on the claim. The Appraisers agreed that Holland America suffered $1,855,514 in lost revenue and expenses during the power outage, but when "makeup" reservations were taken into account the cruise line's actual loss was only $411,003. Based on the latter figure and applying the deductible formula, Fireman's Fund paid Holland America $233,252.25 consistent with the policy terms. Ruling on cross-motions for summary judgment, the district court ordered Fireman's Fund to pay an additional $1,083,383.25, plus pre-judgment and post-judgment interest.

We review the district court's grant of summary judgment de novo. *Ins. Co. of North Am. v. NNR Aircargo Serv. (USA), Inc.*, 201 F.3d 1111, 1113 (9th Cir.2000). A business interruption insurance policy is designed to protect the "earnings which an insured would have enjoyed had there been no interruption of business." *Keetch v. Mutual of Enumclaw Ins. Co.*, 66 Wash. App. 208, 831 P.2d 784, 786 (1992). Construction of an insurance policy is a question of law for the courts, and the policy should be construed as a whole and given a fair, reasonable, and sensible interpretation. *Kitsap County v. Allstate Ins. Co.*,

136 Wash.2d 567, 964 P.2d 1173, 1177 (Wash.1998). "Under the indemnity principle of insurance, an insured receives only that amount that will indemnify actual loss, not an additional windfall above this amount." *Dombrosky v. Farmers Ins. Co.*, 84 Wash.App. 245, 928 P.2d 1127, 1136 n. 4 (Wash.Ct.App.1997).

■ The district court erred by awarding Holland America a substantial windfall, thereby overcompensating it for its loss. Holland America should not be awarded damages for losses it never sustained. To do otherwise would frustrate the purpose of business interruption coverage, which is limited to protecting the earnings the insured would have enjoyed had there been no interruption. *Keetch*, 831 P.2d at 786. It would also violate the basic principle of insurance law that, absent bad faith on the part of the insurer, an insured is entitled to compensation only for losses actually suffered. *Dombrosky*, 928 P.2d at 1136 n. 4.[1]

Holland America cross-appeals the district court's denial of its request for attorneys' fees pursuant to *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wash.2d 37, 811 P.2d 673 (Wash.1991). We review the district court's decision regarding the award of attorneys' fees for abuse of discretion. *Roy Allan Slurry Seal v. Laborers Int'l Union*, 241 F.3d 1142, 1145 (9th Cir.2001).

In *Olympic Steamship*, the Washington Supreme Court held that an insured has the right to recoup attorneys' fees where "an insurer refuses to defend or pay the justified action of the insured." 811 P.2d at 681. The insurer in *Olympic Steamship* precipitated the lawsuit by denying coverage to the insured. By awarding fees, the

---

1. The district court also held that Fireman's Fund was not entitled to an offset for funds Holland America received from Lexington In-surance Company. Fireman's Fund does not dispute this ruling on appeal.

court sought to address the disparity of bargaining power between "an insurance company and its policyholder." *Id.*

■ The district court did not abuse its discretion in denying Holland America's request for attorneys' fees. *Olympic Steamship* has been limited to situations where the insurer unsuccessfully denied coverage, not where the extent or value of coverage was in dispute. *See, e.g., Dayton v. Farmers Ins. Group*, 124 Wash.2d 277, 876 P.2d 896, 898 (Wash. 1994); *Solnicka v. Safeco Ins. Co.*, 93 Wash.App. 531, 969 P.2d 124, 125–26 (Wash.Ct.App.1999). Fireman's Fund did not refuse coverage, and paid Holland America $233,252.25 prior to this lawsuit. This amount was reasonable because it was based on the Appraisers' determination of Holland America's actual loss after make-up reservations, minus the amount deducted under the formula in the policy.

The district court's higher award in favor of Holland America is REVERSED, and the district court's denial of Holland America's request for attorneys' fees is AFFIRMED. Each party shall bear its own costs on appeal.

MCKEOWN, Circuit Judge, Dissenting in part.

I dissent with respect to the reversal of the district court's award of damages to Holland America. The panel majority resolves this case by relying on the principle that an insured should receive "only that amount that will indemnify actual loss, not an additional windfall above this amount." *See Dombrosky v. Farmers Ins. Co.*, 84 Wash.App. 245, 928 P.2d 1127, 1136 n. 4 (Wash.Ct.App.1997). Whatever weight we should give this policy beyond its limited application by Washington state courts, the majority's reliance on this principle overlooks our primary obligation to construe the contract itself and enforce it accordingly. Our starting point should be the contract entered into by these sophisticated parties, rather than the relative monetary outcome or equities. Any evaluation of loss is limited to the Period of Restoration, which concludes when the business is up and running after the business interruption—not at some later date.

The Period of Restoration—which the parties agree creates the relative scope of indemnity—is defined as "the length of time, commencing with the date of damage or destruction, which will be required, with the exercise of due diligence or dispatch, to repair, rebuild or replace the damaged or destroyed property." This language is straightforward and directly supports the larger award of damages in this case. The remainder of the language in the definition is intended to give the insured broader, not lesser, protection in two instances that are inapplicable here: (1) when the policy expires before the above defined period has ended; and (2) when the insured is able to partially restore operations before the damaged property is completely restored. The final phrase of the definition merely ensures that the above two conditions of coverage will not be read to cover any losses incurred beyond the already-defined Period of Restoration. It, too, is inapplicable to this case, and does not support a reading that would expand the relevant period of restoration beyond the time it took to fully repair Holland America's power supply.

To the extent that the contract language supports an alternative reading, Washington law is clear that ambiguous terms must be construed against the insurer. *See Witherspoon v. St. Paul Fire and Marine Ins. Co.*, 86 Wash.2d 641, 548 P.2d 302, (Wash.1976) ("It is fundamental that ambiguities in the policy must be construed against the insurer and in favor of the insured."). Likewise, we have underscored the importance of this rule. *See*

*Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 540 (9th Cir.1990) (quoted in *Emter v. Columbia Health Serv.*, 819 P.2d 390, 394 (Wash.Ct.App.1991) ("insurer ... should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence")).

Fireman's Fund has made too much of the language defining Period of Restoration in order to avoid liability under the contract. The real problem with the policy lies in its definition of Loss of Revenue, which fails to incorporate any sort of mitigation or "make-up" component. Although Washington courts have upheld explicit setoff clauses in policies to prevent double recoveries, *see Keenan v. Indus. Indemnity Ins. Co.*, 108 Wash.2d 314, 738 P.2d 270, 272–73 (Wash.1987), the panel majority would have us expand this notion to include *implied* mitigation provisions into poorly-drafted policies. Because courts should neither override contract language nor usurp the insurer's responsibility to ensure that the scope of coverage is clear and unambiguous, I respectfully dissent.