[No. 39828-8-I. Division One. January 25, 1999.]

BRITISH COLUMBIA MINISTRY OF HEALTH, *Appellant*, v.
STEPHANIE HOMEWOOD, *Respondent*.

*Michael B. King, Mark P. Scheer,* and *Sheree Carson* of *Lane Powell Spears Lubersky, L.L.P.*, for appellant.

*Paul L. Stritmatter* of *Stritmatter Kessler Whelan Withey*, for respondent.

Kennedy, C.J. — Following a car accident that severely injured Stephanie Homewood, British Columbia Ministry of Health (BCMH), Homewood's health insurer, sued her for reimbursement of medical payments it made on her

behalf because she received settlements from multiple joint tortfeasors for less than their combined policy limits without the insurer's consent and released the tortfeasors from further liability. BCMH appeals the trial court's order denying its summary judgment motion and granting Homewood's summary judgment motion, contending that Homewood must reimburse BCMH on alternate theories: first, that a British Columbia (B.C.) statute requires reimbursement from the settlement proceeds; second, that if the principles of equitable subrogation apply at all, the trial court misapplied them under the facts of this case; and third, that Homewood is contractually obligated to reimburse BCMH based on the terms of her settlement agreements with the wrongdoers. Finding no error with respect to any of these alternate theories, we affirm.

## FACTS

On February 10, 1991, Respondent Stephanie Homewood, a Canadian citizen and B.C. resident, was a passenger in a Toyota pickup truck headed northbound on Interstate 5 in Whatcom County, Washington. The pickup was being driven by Daniel Zyblut, who was also a Canadian citizen and B.C. resident. At the same time and place, Derek Cyra, yet another Canadian citizen and B.C. resident, was operating his Mazda RX7 northbound in an adjacent lane. Cyra allegedly suddenly moved his vehicle into the same lane in which Zyblut was driving, forcing Zyblut to swerve to avoid a collision. Zyblut lost control of the pickup, which spun into the median, rolling over several times. Homewood, who allegedly was wearing the seatbelt Toyota had installed in the pickup, was thrown from the vehicle. She suffered multiple devastating injuries, including permanent partial quadriplegia.

Appellant BCMH, an agency of the B.C. government, provided medical insurance to Homewood, and paid $132,775.17 (Canadian) in medical bills for her injuries received in the accident. Zyblut and Cyra had third-party liability coverage through another agency of the B.C.

government, Insurance Corporation of B.C. (ICBC). Zyblut's policy limits were $2 million (Canadian). Cyra's policy limits were $1 million (Canadian).

Two months after the accident, Zyblut was killed in an unrelated accident. Subsequently, Homewood filed a probate action in Whatcom County Superior Court and obtained letters of administration to sue the estate and seek indemnity from Zyblut's liability carrier. The attorney then brought suit against the estate, against Cyra, and, eventually, against Toyota.

The underlying tort action was vigorously litigated for a substantial period of time, but eventually settled following mediation. During mediation, Homewood contended that her total damages exceeded $10 million in U.S. funds. Cyra and Zyblut's estate contended that her total damages did not exceed $5 million and, moreover, that Homewood faced a substantial risk of recovering far less than $5 million in the event of a trial, for various reasons, including substantial issues regarding liability, particularly with respect to Cyra and Toyota. Each party submitted evidence in support of his and her position during the course of mediation. Some of that evidence was later submitted in support of Homewood's cross-motion for summary judgment in the instant lawsuit.

In November 1992, Homewood's Canadian counsel contacted BCMH and asked for details of its subrogation claim in Homewood's case. In April 1993, BCMH replied with a letter that detailed its costs and explained its plan for reimbursement from ICBC, the insurer of Zyblut and Cyra:

> We wish to confirm that [BCMH] retains the right of subrogation in all third party cases. However, in the case of an accident which is the responsibility of the [ICBC], it is not necessary for you to protect our subrogated interest. The [ICBC] and the [BCMH] have a reimbursement arrangement in third party liability cases.

Clerk's Papers at 343.

But in March 1995, BCMH sent Homewood's U.S. counsel a letter regarding the legal action, requesting that Homewood seek recovery of medical costs as it alleged was required by B.C. statute:

> It is not expected that an insured person should initiate an action solely to recover the cost of medical services. However, if a claim is made, then in accordance with [section 4.06 of the Medical Service Act, a B.C. statute], the medical costs involved should be included as an integral part of the action.

Clerk's Papers at 78. BCMH attached an invoice for its expenses and concluded, "[i]f liability is established and you are successful in recovering our costs, then we expect reimbursement accordingly." Clerk's Papers at 79.

In April 1995, Homewood accepted structured settlements from ICBC on behalf of the estate in the amount of $2,000,000 (Canadian), an amount equal to Zyblut's insurance policy limit, and from ICBC on behalf of Cyra of $500,000 (Canadian), an amount less than his policy limit of $1,000,000 (Canadian). In addition, Toyota paid Homewood $350,000,[1] an amount far less than Toyota's (presumably unlimited) policy limits. Upon accepting these amounts, Homewood released all tortfeasors from further liability, and agreed to satisfy any known liens and to hold the tortfeasors harmless from any such known liens. BCMH was neither a party to this settlement agreement, nor did it approve it.

Homewood refused to reimburse BCMH for medical payments it made on her behalf, and BCMH sued her in Whatcom County Superior Court for $132,775.17 (Canadian),[2] contending that she must reimburse BCMH under a B.C.

---

[1]From the record, it is unclear if Toyota paid Homewood in U.S. or Canadian dollars. But this issue is not material to this appeal.

[2]BCMH asserts that there is no dispute that BCMH paid medical expenses on Homewood's behalf in amount equal to $148,150.86 (Canadian), rather than $132,775.17 (Canadian), which is the amount listed in its complaint. But BCMH concedes that it failed to amend its complaint against Homewood to reflect the higher amount. Because the true amount paid by BCMH on Homewood's behalf is unclear from the record, we rely on the figure in the complaint, i.e., $132,775.17 (Canadian).

statute and her settlement agreement with the tortfeasors. Homewood responded that under Washington's doctrine of equitable subrogation, BCMH had no right of recovery because the settlements did not fully compensate her and because BCMH was not prejudiced by the settlements—in that she exhausted Zyblut's policy limits in the course of settlement and settled with Cyra and Toyota for more than their respective proportionate shares of liability.

In reply, BCMH asserted that even if Washington's equitable doctrine of subrogation applied, it still had a right to recover. Because Homewood settled for an amount less than the combined policy limits of all the tortfeasors, BCMH maintained that Homewood was fully compensated as a matter of Washington law.

The parties cross-moved for summary judgment on their respective theories. BCMH "concede[d] for purposes of [summary judgment] that [Homewood] didn't make a full recovery." Report of Proceedings at 16. Still, BCMH maintained that it was prejudiced by Homewood's full release of the tortfeasors regardless of whether she was fully compensated.

In support of her cross-motion, Homewood presented some of the same evidence that was used in reaching the mediated settlement of the underlying tort suit, but adopted the $5 million figure for Homewood's total damages that the defendants had used during mediation of the underlying claim.[3] BCMH did not present controverting evidence with respect to the tortfeasors' proportionate shares of liability or with respect to the total amount of Homewood's damages for purposes of summary judgment, contending instead—as it has for this appeal—that BCMH is entitled to summary judgment as a matter of law regardless of whether Homewood made a total recovery and regardless of the percentages of liability of the three joint tortfeasors. Insofar as we can determine from the record

---

[3]BCMH's counsel for the instant matter represented Zyblut's estate and Cyra during the underlying tort litigation. And Homewood's counsel for the tort claim was the same as her counsel for the instant matter.

and the briefs for this appeal, BCMH made no motion before the trial court to strike Homewood's evidence in support of her motion for summary judgment, and the trial judge considered Homewood's evidence in determining that there were no genuine issues of material fact barring summary judgment.

The trial court denied BCMH's summary judgment motion and granted Homewood's cross-motion. BCMH appeals:

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The motion will be granted, after considering the evidence in the light most favorable to the nonmoving party, only if reasonable persons could reach but one conclusion." *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). "When reviewing a summary judgment order, an appellate court engages in the same inquiry as the trial court." *Id.*

A. B.C. Law

■ BCMH contends that B.C. law governs this matter. Courts may independently research and consider foreign law materials after a party raises an issue concerning foreign law. CR 44.1; 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2446 (2d ed. 1995). Nonetheless, courts are not obliged to incur an extreme burden to take "judicial notice" of foreign law. *Cf.* FED. R. CIV. P. 44.1 advisory committee's note; *Anderson v. McAllister Towing & Transp. Co.*, 17 F. Supp. 2d 1280, 1286 n.6 (S.D. Ala. 1998) (noting that researching the law of many foreign countries is considerably more complex than going to the law library). Further, "court[s] should not be asked to decide a case based on incomplete and frequently confus-

ing explanations of foreign law[.]" *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1007 (5th Cir. 1990). Thus, "absent sufficient proof to establish with reasonable certainty the substance of the foreign principles of law, . . . court[s] should apply the law of the forum." *Id.* at 1006; *see also Canron Inc. v. Federal Ins. Co.*, 82 Wn. App. 480, 494, 918 P.2d 937 (1996) (presuming, where neither party argues that B.C. law applies, that B.C. law is the same as Washington law), *review denied*, 131 Wn.2d 1002 (1997).

In the settlement agreement between Homewood and the tortfeasors, Homewood and her attorneys "agree[d] to satisfy any known liens, and Stephanie Homewood agrees to hold the released parties harmless and indemnify the released parties from any claims by lien holders for any such known liens." Clerk's Papers at 89. BCMH asserts that it acquired a known lien against the released tortfeasors under The Medical Services Act section 4.06, a B.C. statute.[4] That section provides:

> Where payment is made under the plan for insured services rendered to an insured person who has a right of action against a third person for the amount or any part of the amount so paid, the commission shall be subrogated to the rights of the insured person to recover that amount or part thereof, and in the event that the insured person recovers the amount or part thereof, the amount recovered shall be a debt owing by him to the commission and shall be recoverable by action against him by the commission.

Clerk's Papers at 107 (quoting The Medical Services Act section 4.06).

BCMH contends that this B.C. statute is unambiguous and must be applied to require Homewood to reimburse it for the full amount of its contribution to her medical expenses arising from the accident, regardless of whether she made a full recovery in the course of the settlement of the underlying lawsuit. This statute is not unambiguous.

---

[4]BCMH contends, and Homewood does not refute, that this statute is now titled, "The Medicare Protection Act."

Certainly, it is clear that BCMH is subrogated to Homewood's right to recover medical expenses arising from the accident from the responsible tortfeasors—a right that BCMH initially said it would pursue directly from ICBC. But it is not clear whether, under B.C. law, Homewood has recovered all or part of the amounts paid for her medical care in that she has not, for purposes of summary judgment, been fully compensated. Put another way, under B.C. law, it may or may not be that under equitable subrogation principles, settlement proceeds are deemed first to go to general damages and then to special damages—as is the case in Washington—to determine whether there has been full or partial recovery of medical expenses arising from the injury.[5]

BCMH has not provided us with any clarifying B.C. case law or legislative history with respect to this question. Instead, BCMH relies upon Washington case law construing RCW 74.09.180 and RCW 43.20B.060, which supplant equitable subrogation principles and require reimbursement to Washington's Department of Social and Health Services when it elects to pay for a medical assistance recipient's medical care arising from injuries caused by the wrongdoing of another. *See Paulsen v. Department of Soc. & Health Servs.*, 78 Wn. App. 665, 666-70, 898 P.2d 353 (1995), *review denied*, 128 Wn.2d 1010 (1996); *see also Patterson v. Horton*, 84 Wn. App. 531, 537-40, 929 P.2d 1125 (1997).

But those statutes clearly and unambiguously give the State a right of "reimbursement of any assistance paid" "to the extent of the value of the assistance paid." RCW 43.20B.060(1)-(2); *see also* RCW 74.09.180 (providing that when the State elects to pay for medical care of a medical assistance recipient for injuries arising from the negligence of another, the agency becomes "subrogated to the recipi-

---

[5]*See Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 219, 222, 588 P.2d 191 (1978) (In equity, an insurer's right to recover a subrogation interest is limited to "the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss" and insured is permitted "to recoup his general damages . . . before allowing subrogation[.]").

ent's rights against the recovery had from any tort feasor or the tort feasor's insurer, or both, and shall have a lien thereupon to the extent of the value of the assistance furnished by the department.").

Comparing the B.C. statute with the statutes construed in *Paulsen*, we observe substantial differences in language. The statutes at issue in *Paulsen* give the state both a right of reimbursement and a statutory lien upon the recovery for the extent of the value of the assistance furnished. Reimbursement "by definition denotes restoration of an amount equivalent to that expended or repayment in full." *Paulsen*, 78 Wn. App. at 671-72. The B.C. statute does not appear to require repayment in full unconditionally, for it refers to the amount paid "or part thereof." This seems to recognize that an injured party may not recover the full amount paid but only a part of it, or perhaps even none of it.

Moreover, it is not at all clear whether the "debt" owing to the insured by the commission is the same creature as the statutory lien provided by the Washington statutes at issue in *Paulsen*. BCMH provided authorities for the proposition that a common law action in debt lies where and only where the sum due is liquidated, that is, capable of being readily reduced to a certainty. *See, e.g., Williamson v. Columbia Gas & Elec. Corp.*, 110 F.2d 15, 18-19 (3d Cir. 1939). Although the full amount paid by BCMH is liquidated, this begs the question of whether the B.C. statute allows full recovery where the injured person has recovered only part or even none of the amounts paid for medical care arising from the injuries.

Absent a clear indication of a legislative directive to abandon equitable considerations, whether Homewood has recovered all or any part of the amounts paid by BCMH for her injuries is inextricably intertwined with the question of the amount of her general damages. Thus, the amount recovered would not appear to be a "debt" under common law principles in that it is not necessarily a liquidated sum. *Cf. Jones v. Firemen's Relief & Pension Bd.*, 48 Wn. App.

262, 267, 738 P.2d 1068 (1987) (declining to find that the subrogation statute at issue supplanted equitable subrogation principles absent a clear indication of legislative intent to require full repayment regardless of the fact that the injured fireman did not receive full recovery for his injuries).

We refuse to independently investigate B.C. law to determine whether B.C. intended its statute to supplant principles of equitable subrogation. Further, we are not persuaded on the basis of the Washington statutes and case law provided to us by BCMH that—even applying Washington law—this same statute supplants those equitable principles as a matter of law. Because BCMH failed to present sufficient proof to establish with reasonable certainty the substance of B.C. principles of law, we apply the law of the forum, i.e., Washington's doctrine of equitable subrogation. *See Banque Libanaise*, 915 F.2d at 1006.

B. Washington Law

 Washington's doctrine of equitable subrogation enables an insurer that has paid its insured's loss to recoup that payment from the party responsible for the loss. *Mahler v. Szucs*, 135 Wn.2d 398, 413, 957 P.2d 632, 966 P.2d 305 (1998). Under this doctrine, the "general rule is that where the insured is entitled to receive recovery for the same loss from more than one source, *e.g.*, the insurer and the tortfeasor, the insurer acquires a right to subrogation only after the insured has been fully compensated for all of the loss." *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 138 n.2, 930 P.2d 288 (1997). "This rule embodies a policy deemed socially desirable in this state, in that it fosters adequate indemnification of innocent automobile accident victims." *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 220, 588 P.2d 191 (1978), *quoted in Mahler*, 135 Wn.2d at 417.

Nonetheless, equitable subrogation is "tempered by the principle that the insured and/or a tortfeasor may not knowingly prejudice the right of the insurer to be reimbursed." *Mahler*, 135 Wn.2d at 418. Thus, the insured must

recoup his or her general damages from the tortfeasor before subrogation is permitted, "provided, of course, that in so doing [the insured] does not prejudice the rights of his [or her] insurer." *Thiringer*, 91 Wn.2d at 222.

For purposes of summary judgment, BCMH has conceded that Homewood was not "fully compensated." Nonetheless, BCMH argues that *State Farm Mut. Auto. Ins. Co. v. Lou*, 36 Wn. App. 838, 842, 678 P.2d 339 (1984), stands for the proposition that if an injured party leaves money lying on the table, i.e., settles for less than the combined policy limits of multiple tortfeasors regardless of their respective percentage shares of liability, it is presumed by law that the injured party did receive full recovery and, therefore, that the insurer is prejudiced. But *Lou* did not deal with multiple joint tortfeasors; rather, it dealt with a single tortfeasor.

In *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 556, 707 P.2d 1319 (1985), our Supreme Court cited *Lou* for the proposition that the insurer "is entitled to recover only if the released entities' negligence exceeded the settlement figure as a percentage of the plaintiff's total injuries." The *Elovich* court explained:

> In other words, to establish prejudice [the insurer] must show (1) the percentage of negligence of [each of three tortfeasors]; (2) the total losses the plaintiff suffered; (3) that the settlement as a percentage of plaintiff's total injuries was less than the percentage of the settling entities' comparative negligence. Only if the latter percentage exceeds the former will [the insurer's] subrogation rights have been prejudiced and *Lou* apply. Otherwise the rule from *Thiringer*[ *v. American Motors Ins. Co.*, 91 Wn.2d at 222] applies: the insurance company's subrogation rights arise only after the plaintiffs have received full compensation for their injuries.

*Elovich*, 104 Wn.2d at 556.[6]

Under *Elovich*, where the insured is entitled to recover

---

[6]We summarily reject BCMH's argument that *Elovich* applies only in uninsured and underinsured motorist cases. Indeed, no other approach than that set forth in *Elovich* makes sense in a case involving multiple joint tortfeasors and

medical expenses from both her own insurer and the responsible third party, the insurer acquires a right to subrogation only after the insured has been fully compensated for his or her loss, and the burden of proving that the insured has been fully compensated is on the insurer. *Elovich*, 104 Wn.2d at 555-56. BCMH made no effort to prove that Homewood has been fully compensated. Thus, the trial court ruled that there were no genuine issues of material fact and that Homewood was entitled to judgment as a matter of law.

Although BCMH argues for the first time in its reply brief that the evidence the trial court relied upon is not competent evidence, insofar as we can ascertain from the record and briefs for this appeal, BCMH made no motion below to strike any of Homewood's evidence. ER 103(a)(1) requires that a party make a "timely objection or motion to strike . . . stating the specific ground of objection[.]" And under RAP 2.5(a), appellate courts will not address issues not raised below, except under circumstances not present here. We decline to launch an independent review of the record in search of evidence that could or even should have been the subject of a motion to strike below, in the absence of any indication that such a motion was made. Accordingly, the evidence Homewood submitted in support of her cross-motion for summary judgment is uncontroverted in the record.

BCMH fails to persuade us that Washington's principles of equitable subrogation do not apply under the facts of this case, or that the trial court erred in the manner that it applied those principles.

We also reject BCMH's contention that our ruling is tantamount to a determination that an injured party invoking the principles of equitable subrogation may subjectively value his or her own injuries and thereby bind his or her insurer. Under different facts—where the insurer does not

comparative negligence principles. BCMH's proposed limitation of *Elovich* would render settlement with joint tortfeasors whose percentage of fault and corresponding share of the damages is less than their policy limits virtually impossible.

concede that the injured party was not fully compensated and has, instead, filed controverting evidence raising genuine issues of material fact with respect to that question in light of the formula in *Elovich*—an objective valuation of the party's injuries by a trier of fact would be required.

In sum, Homewood was not fully compensated and accepted settlements that did not prejudice her insurer. Under Washington's principles of equitable subrogation, she is not required to reimburse her insurer, BCMH, for medical payments it made on her behalf.

Our conclusion is not altered by the fact that Homewood and her attorneys contractually agreed with the joint tortfeasors to satisfy any known liens and to hold the tortfeasors harmless and indemnify them from claims by lien holders for any such known claims. First, although the settlement agreement contains a provision that it will be construed under the law of B.C., BCMH has provided us with no B.C. law from which we could construe the agreement as BCMH desires us to do. Second, nothing in the contractual language appears to require Homewood to pay any debt or satisfy any lien that she does not owe under principles of equitable subrogation. And third, to date, Homewood has not been called upon to hold the tortfeasors harmless—this being a lawsuit brought by BCMH against Homewood and not against the tortfeasors or their insurers.

Accordingly, we affirm the trial court's denial of BCMH's motion for summary judgment and affirm the trial court's grant of Homewood's cross-motion for summary judgment.

AGID and BECKER, JJ., concur.