

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 2 2 2019
Fairhurst, CA.
CHIEF JUSTICE

This opinion was
filed for record
at 8 a.m on Aug 22, 2019
Susan X Carl
Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| GROUP HEALTH COOPERATIVE, a Washington nonprofit corporation, | NO. 96516-1 |
| Petitioner, | |
| v. | EN BANC |
| NATHANIEL COON and LORI COON, husband and wife, | |
| Respondents. | Filed AUG 2 2 2019 |

STEPHENS, J.—Group Health Cooperative (GHO) provided health insurance benefits to Nathaniel (Joel) Coon, who suffered a serious fungal infection and amputation following knee surgery at the Everett Clinic (TEC). The Coon family later settled potential negligence claims against TEC, and GHO initiated this lawsuit seeking reimbursement of its payments from the settlement proceeds. We must decide if genuine issues of material fact preclude summary judgment in favor of GHO regarding whether the settlement constituted full compensation to Coon,

and whether GHO suffered prejudice from the Coons' failure to provide notice prior to finalizing the settlement. For the reasons explained below, we hold that summary judgment is inappropriate. We affirm the Court of Appeals and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Coon lives in Snohomish, Washington, with his wife and two teenage daughters. In his early 20s, Coon started a residential lawn-care business that has seen steady growth over the years, even during a recession, and now includes an extensive commercial landscaping component. In addition to being heavily involved in the day-to-day operations of the business, Coon and his family have enjoyed a very active lifestyle with hobbies that include traveling, boating, fishing, and hunting. The Coon family's lives changed dramatically in 2012 after Coon developed a rare fungal infection that ultimately led to an above-knee amputation of his right leg.

*Initial Injury and Infection*

In January 2012, Coon heard a "pop" in his right knee while playing tug-of-war on ice; he experienced immediate pain and disability. Clerk's Papers (CP) at 153. Coon's initial surgery was performed on March 1, 2012 at TEC's Kemp

Surgery Center; Coon tolerated the procedure well and was sent home the same day. *Id.* at 153-54.

Coon's recovery seemed normal until March 19, when he returned to TEC complaining of worsening pain and fever. Lab tests revealed an elevated white blood cell count, although an aspiration[1] of Coon's knee showed no organisms on the gram's stain. The next day, Coon was admitted to Providence Regional Medical Center for further evaluation and initiation of antibiotic treatment. On March 26, the fungus Scedosporium prolificans (SP) was isolated from the knee aspiration fluid collected on March 19. SP, a fungus typically found in soil and polluted waters, is extremely rare, aggressive, and resistant to most known and United States Food and Drug Administration-approved antifungal agents.

After other cultures grew out of the SP, Coon began the difficult process of antifungal therapy. The University of Washington Medical Center (UWMC) analyzed the pathology of Coon's SP infection and confirmed resistance to antifungal agents. Throughout the month of April, physicians "contacted the [Centers for Disease Control], researched the literature, tried multiple antifungal agents, and consulted with nationally recognized [infectious disease] experts." *Id.*

---

[1] Joint aspiration is a procedure to remove fluid from the space around a joint for diagnostic purposes. *Joint Aspiration*, JOHNS HOPKINS MED., https://www. hopkinsmedicine.org/health/treatment-tests-and-therapies/joint-aspiration [https://perma. cc/PJQ4-MM65].

at 155. During these treatment regimens, Coon suffered severe nausea, vomiting, visual and auditory changes, and hallucinations, and developed Stevens-Johnson syndrome.[2] *Id.* By the beginning of May it was clear that all attempted measures had failed to control the infection.

As his condition severely worsened, Coon consulted with orthopedic surgeons from the UWMC Department of Orthopedics, TEC, and Swedish Medical Center. All advised that they were unfamiliar with this type of aggressive fungal infection and lacked the requisite expertise to provide any new treatment plans. *Id.* at 155-56. As a result, Coon was referred to the Mayo Clinic for treatment. *Id.* at 156. From August to October, Coon was seen at the Mayo Clinic by leading orthopedic surgeons and infectious disease physicians. They attempted a combination of aggressive surgical procedures and antifungal therapies with no success. Eventually, Coon's leg had to be amputated due to extreme pain and limited function. The amputation was performed at the Mayo Clinic on October 17, 2012.

After the amputation, Coon returned to Washington for rehabilitation, prosthesis fitting, and physical therapy. *Id.* at 157. At the initiation of this litigation, Coon was still suffering from "ongoing phantom pain, stump pain, socket pain, low

---

[2] "Stevens Johnson syndrome is a rare, serious, sometimes fatal disorder in which a person's skin and mucous membranes react severely to a medication or infection. It often begins with flu-like symptoms, followed by a painful red or purplish rash that spreads and blisters, eventually causing the top layer of the skin to die and shed." CP at 155 n.5.

back and hip pain, trouble sleeping, and poor fit of his prosthesis with multiple falls." *Id.* In addition to the physical effects of the amputation, Coon has been severely limited in his ability to manage his business, and he struggles to return to the active lifestyle he enjoyed with his family.

*Litigation and Settlement*

During the period of treatment and recovery, TEC worked cooperatively with the Coons and paid a total of $322,645 for uncompensated medical expenses, travel, and accommodations. *Id.* at 160. The Coons retained counsel to investigate any possible legal claims. *Id.* at 353.

Counsel for the Coon family went to great lengths to determine the source of the fungal infection, consulting with various experts. One theory, which evolved after discussions with an expert at the Mayo Clinic, was that the spores were potentially tracked into the operating room by a provider and then somehow managed to settle onto the graft tissue prior to insertion. *Id.* at 145. Another expert called into question the operation of the positive pressure ventilation system in the operating room, hypothesizing that the SP spores could have been transmitted from construction sites near the clinic. *Id.* at 146. After examining infection prevention standards at TEC, the history of fungal infections at TEC, and the presence of any permitted or unpermitted construction work during the procedure, the source of the

SP fungal spores has yet to be determined. TEC rejects the above potential theories of liability and maintains that Coon was the likely carrier of the SP spores due to his "occupation as a landscaper." *Id.* at 159. Without extensive discovery to pinpoint an exact theory of causation, counsel concluded that the Coons had a res ipsa loquitur case. *Id.* at 145.

In addition to investigating potential theories of liability, counsel notified GHO in December 2013 that the Coons were being represented in connection with the injury and amputation. At that time, counsel requested a breakdown of GHO's subrogation lien for benefits provided to Coon. GHO responded that it had provided medical coverage in the amount of $372,634, in accordance with GHO's individual and family plan 2012 medical coverage agreement. *Id.* at 390-91. GHO asked counsel to "'[p]lease keep us informed regarding settlement negotiations and contact us prior to final settlement to confirm Group Health's subrogation amount.'" *Id.* at 392 (alteration in original).

In January 2014, counsel notified GHO that mediation of the Coons' claim against TEC was scheduled for February. GHO advised that Pamela Henley would be the GHO contact for the mediation. GHO maintains that while it was notified when the mediation was postponed until March 2014, it was never consulted during the mediation negotiations that led to the settlement.

On April 25, 2014, the Coons and TEC signed a settlement agreement for an additional $2 million. *Id.* at 254-56. In total, the Coons received $2,328,936.86 from TEC for their negligence claims. *Id.* After receipt of the settlement, counsel for the Coons advised GHO that his firm would hold back the amount of GHO's lien in its trust account until May 30, 2014 and requested that GHO waive its reimbursement rights. *Id.* at 392. On May 30, 2014 at 3:39 p.m., Henley responded that GHO would not waive its reimbursement rights but would pay "its equitable apportionment of the collection costs and legal fees/expenses incurred to recover GH[O]'s subrogated interest." *Id.* Counsel informed Henley on June 2, 2014 that his firm had disbursed the remaining funds to the Coons. *Id.* at 393.

In 2016, GHO filed a complaint in Snohomish County Superior Court, seeking a determination of its subrogation rights and a judgment against the Coons for $372,634, the amount of medical expenses paid by GHO. *Id.* at 495. Both sides filed motions for summary judgment. The superior court granted GHO's motion and held:

> Reasonable minds can reach but one conclusion as to the following facts:
> a. Parties may decide by agreement what amounts to full compensation for their damages taking into account their chances of success or failure at trial.
>   . . . .
> c. Once a party settles a claim, the party has identified and accepted the amount of settlement as full compensation for the party's damages.
>   . . . .

g. By settling for less than the available insurance policy limits in consideration of Defendants' evidence of damages versus risk of failure at trial, NATHANIEL COON and LORI COON's agreement to settle constitutes full compensation for their damages as a matter of law.

*Id.* at 511-12 (Order Granting Pl. GHO's Mot. for Summ. J.). The superior court entered judgment against the Coons in favor of GHO in the amount of $372,634 plus interest. *Id.* at 513.

The superior court separately denied a cross motion for summary judgment by the Coons, concluding that they "breached their duties under their contract" by settling with TEC "without protecting Plaintiff's subrogation interest." *Id.* at 516. The Coons appealed the superior court's order granting summary judgment to GHO but elected not to appeal the denial of their motion.[3]

The Court of Appeals reversed the order granting summary judgment to GHO, holding that GHO had no valid and enforceable subrogation claim against the Coons. *Grp. Health Coop. v. Coon*, 4 Wn. App. 2d 737, 754, 423 P.3d 906 (2018). Because questions of fact exist regarding (1) whether the Coons received full compensation for their losses and (2) whether GHO was prejudiced by the Coons' breach of their insurance contract, the Court of Appeals reversed and remanded to the superior court

---

[3] GHO argues that the Coons' appeal is moot because they did not appeal the superior court's order denying their summary judgment motion. Pet. for Review at 5. The Court of Appeals rejected this argument, recognizing that the determination of breach does not affect the Coons' rights under the contract absent proof of prejudice to GHO. *See Grp. Health Coop. v. Coon*, 4 Wn. App. 2d 737, 748, 423 P.3d 906 (2018).

for further proceedings. *Id.* GHO petitioned this court for review on both of these issues, and we granted review pursuant to RAP 13.4(b). *Grp. Health Coop. v. Coon*, 192 Wn.2d 1017, 433 P.3d 812 (2019).

## ANALYSIS

When an appeal arises out of an order granting summary judgment, this court engages in the same inquiry as the trial court. *Johnson v. Farmers Ins. Co. of Wash.*, 117 Wn.2d 558, 565, 817 P.2d 841 (1991). Summary judgment is proper only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). "All facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo." *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994) (citation omitted).

Fundamentally, subrogation governs "how, if, and when an insurer may recover monies that it has paid to its insured." Brendan S. Maher & Radha A. Pathak, *Understanding and Problematizing Contractual Tort Subrogation*, 40 LOY. U. CHI. L.J. 49, 50 (2008). While the idea of subrogation began as an equitable doctrine, modern subrogation rights can be found in common law, contract, or statute. *Id.* at 59. Wherever they reside, it has long been recognized that such rights

are subject to the principle that an insured must be "made whole" for any losses before an insurer may recover its payments:

> [W]hile an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a [tortfeasor] responsible for the damage, it can recover only the excess which the insured has received from the wrongdoer, remaining after the insured is *fully compensated* for his loss.

*Thiringer v. Am. Motors Ins. Co.*, 91 Wn.2d 215, 219, 588 P.2d 191 (1978) (emphasis added); *see also Daniels v. State Farm Mut. Auto. Ins. Co.*, 193 Wn.2d 563, 576, ___ P.3d ___ (2019) (explaining "[w]hether in the context of a reimbursement request, offset, or direct subrogation action, a fault-free insured must be made whole for their entire loss before an insurer may offset or recover its own payments"). This "made whole" principle "embodies a policy deemed socially desirable in this state." *Thiringer*, 91 Wn.2d at 220.

A. Absent a Litigated Determination of Nonliability, Any Subrogation or Reimbursement Rights Asserted by an Insurer Are Subject to the "Made Whole" Doctrine

The relevant portion of the Coons' insurance contract states:

> If the Injured Person's injuries were caused by a third party giving rise to a claim of legal liability against the third party and/or payment by the third party to the Injured Person and/or a settlement between the third party and the Injured Person, GHO shall have the right to recover GHO's Medical Expenses from any source available to the Injured Person as a result of the events causing the injury, including but not limited to funds available through applicable third party liability coverage and uninsured/underinsured motorist coverage. This right is commonly referred to as "subrogation." GHO shall be subrogated to and may enforce all rights of the Injured Person to the full extent of GHO's Medical Expenses.

> *GHO's subrogation and reimbursement rights shall be limited to the excess of the amount required to fully compensate the Injured Person for the loss sustained, including general damages.*

CP at 93 (emphasis added). From this contract language, GHO argues that it is entitled to full recovery of its payments to Coon because there is no "third-party tortfeasor . . . 'responsible in law' for the insured's injury." Pet. for Review at 10. This argument fails for several reasons.

Initially, as the Court of Appeals recognized, GHO's argument is internally contradictory. *See Grp. Health Coop.*, 4 Wn. App. 2d at 750-51. Because GHO has identified its claim as a subrogation lien, GHO bears the burden to prove the existence of a third-party tortfeasor for the lien to attach. *Id.* at 751. If we accept GHO's assertion that there is no third-party tortfeasor within the meaning of its contract, which we do not, then the Court of Appeals is correct that GHO has no subrogation claim at all. *Id.* Quite simply, if Coon's injuries were not "caused by a third party giving rise to a claim of legal liability," CP at 93, then, by its own contract language, GHO is not entitled to any reimbursement. In such instance, the Coons would have simply received the benefit of their first-party insurance contract.

Second, GHO's argument wrongly assumes that an insured may contract for reimbursement without regard to limits on its subrogation rights. Pet. for Review at 8. GHO cites to *Mahler v. Szucs* for this notion, but the *Mahler* court explicitly recognized that even when such contract language is employed, any right to

reimbursement remains subject to *Thiringer's* "made whole" rule. 135 Wn.2d 398, 424, 957 P.2d 632 (1998).

> State Farm had only a right of reimbursement from its insureds from the proceeds of the settlements. More important, State Farm had to await the outcome of the settlement process before attempting any recovery from the tortfeasors' insurers, because, pursuant to *Thiringer*, State Farm was not entitled to any recovery of its PIP payments until its insured had been made whole.

*Id.*; *see also Sherry v. Fin. Indem. Co.*, 160 Wn.2d 611, 619, 160 P.3d 31 (2007) ("An insurer is entitled to an offset, setoff, or reimbursement when both (1) the contract itself authorizes it and (2) the insured is fully compensated by the relevant 'applicable measure of damages.'" (quoting *Barney v. Safeco Ins. Co. of Am.*, 73 Wn. App. 426, 429-31, 869 P.2d 1093 (1994))). Even if this court were to find that GHO's right to direct reimbursement is not dependent on its right to subrogation, the fact remains that, if Coon has not been "made whole," no right to reimbursement ever arises. Certainly, absent full recovery by Coon, GHO does not have a right to be reimbursed from the Coons' settlement proceeds.

Ultimately, GHO's argument for reimbursement without regard to the "made whole" rule rests on equating this case with *Cook v. USAA Casualty Insurance Co.*, 121 Wn. App. 844, 846, 90 P.3d 1154 (2004). There, the Court of Appeals found *Thiringer* inapplicable in a situation where there was, in fact, no third party liable for the insured's losses. *Cook*, 121 Wn. App. at 848-49. *Cook* involved a house fire

started by a gas water heater exhaust flue. *Id.* at 846. Though the Cooks settled with their insurer, USAA, for policy limits, they elected to go to trial, claiming that the water heater installer's negligence was the cause of the fire. *Id.* At trial, however, the jury returned a verdict for the defense and found no negligence on the part of the installer. *Id.* Thus, there was no third-party tortfeasor from whom the insured could recover.

While the Cooks' litigation efforts were under way, USAA sold its subrogation interest to the water heater installer and a general contractor who was managing the Cooks' home construction, for $151,000. *Id.* The Cooks later demanded that USAA make them whole for their uninsured losses by giving them a portion of the proceeds that USAA garnered in its own settlement negotiations with the installer. *Id.* at 847. The court rebuffed this unusual move, holding, "[W]hen the insured has no basis in tort or contract for a recovery, such as in the Cooks' situation, then *Thiringer* does not apply." *Cook*, 121 Wn. App. at 849. Because the Cooks received the full benefit of their insurance contract and did not suffer a compensable injury (in the sense that there was a litigated determination of no liability), the court concluded that the Cooks were not entitled to share in USAA's (fortuitous) recovery. *Id.*

As the Court of Appeals recognized, there are three distinguishing factors between *Cook* and the present case. *See Grp. Health Coop.*, 4 Wn. App. 2d at 752-53. First, in *Cook*, there was a litigated determination of nonliability: a jury decided the entity paying money to USAA (the installer) had no liability to the Cooks. *Id.* Here, in contrast, the Coons pursued claims of liability against TEC and settled based on a calculated risk decision involving the difficulty of proving a res ipsa loquitur case at trial. Second, the Cooks received the full benefit of their insurance policy from USAA because they received, and retained in full, their insurance proceeds. *Id.* at 753. In contrast, here, refusing to apply *Thiringer* "would deprive the Coons of the full benefit of their Group Health policy" by making them reimburse GHO without having been "made whole." *Id.* Lastly, and perhaps most importantly, the Cooks attempted to use *Thiringer* to recover monies from USAA that a court already determined they had no legal right to recover. *Id.* In other words, "the Cooks sought to benefit from USAA's more successful litigation strategy and transfer the economic consequences of their choice to USAA." *Id.* As the Coons correctly point out, unlike the Cooks, who never made a recovery to which the *Thiringer* priority rule could apply, their situation represents the typical settlement scenario to which the *Thiringer* priority rule has been applied over the last 40 years. Suppl. Br. of Resp'ts at 9.

The fact that the Coons' case involves a health insurance policy rather than a liability or casualty policy does not support a different outcome. Admittedly, there was some initial question early in our jurisprudence "about the extent to which insurance law applies" to health insurance contracts. *Brown v. Snohomish County Physicians Corp.*, 120 Wn.2d 747, 753, 845 P.2d 334 (1993). In response, this court issued a clarification in *Brown* by noting, "'[T]he key factor' in *Thiringer* was 'the presence or absence of double recovery', not subrogation principles or premiums." *Id.* at 755 (citing *Keenan v. Indus. Indem. Ins. Co. of Nw.*, 108 Wn.2d 314, 319, 738 P.2d 270 (1987)). For this reason, we held, "[T]o the extent that the provisions [in a health insurance contract] operate to exclude coverage for medical expenses before the injured party is fully compensated for general damages and other special damages, the second floating layer of coverage is effectively negated by the provisions." *Id.* at 757.

This holding was later applied in *British Columbia Ministry of Health v. Homewood*, where the defendant was sued by her health insurer for reimbursement of medical payments made on her behalf. 93 Wn. App. 702, 703-04, 970 P.2d 381 (1999). The insurer claimed that it was entitled to reimbursement because Homewood received settlements from multiple joint tortfeasors "for less than their combined policy limits without the insurer's consent." *Id.* at 704. Because the case

arose from an accident that resulted in multiple severe injuries, including permanent partial quadriplegia, Homewood estimated during mediation that her total damages exceeded $10 million. *Id.* at 705. As in this case, however, Homewood faced substantial challenges in proving liability and, as a result, estimated that she would recover less than $5 million at trial. *Id.* For these reasons, Homewood accepted a structured settlement of just under $3 million (Canadian dollars). *Id.* at 706. Applying *Thiringer*, the court held, "[T]he insured must recoup his or her general damages from the tortfeasor before subrogation is permitted." *Id.* at 712-13. Homewood was therefore not obligated to reimburse her insurer the amount it paid for health care expenses because she had not been "made whole." *Id.* at 715. In light of *Brown* and *Homewood*, there is no room for GHO's argument that the "made whole" rule is inapplicable to its contractual subrogation rights in the health insurance context.

Applying the "made whole" rule, the superior court erred when it found, "By settling for less than the available insurance policy limits in consideration of Defendants' evidence of damages versus risk of failure at trial, NATHANIEL COON and LORI COON's agreement to settle constitutes full compensation for their damages *as a matter of law*." CP at 512 (Order Granting Pl. GHO's Mot. for Summ. J.) (emphasis added). Settlement for less than the tortfeasor's policy limits

does not create a presumption of full compensation. *Liberty Mut. Ins. Co. v. Tripp*, 144 Wn.2d 1, 22, 25 P.3d 997 (2001). Instead, acceptance of a settlement is simply *some evidence* that the insured has been fully compensated. *Loc Thien Truong v. Allstate Prop. & Cas. Ins. Co.*, 151 Wn. App. 195, 201, 211 P.3d 430 (2009). Despite the superior court's ruling, GHO wisely conceded this point at oral argument. Wash. Supreme Court oral argument, *Grp. Health Coop. v. Coon*, No. 96516-1 (May 30, 2019), at 39 min., 39 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. Because there is no presumption of full compensation from the acceptance of a settlement below policy limits, and because the Coons have met their burden of production by putting forth evidence that they have not been fully compensated, summary judgment was inappropriate. On remand, GHO bears the burden of proving full compensation. This is a question of fact, not of law.

In sum, the Coons have a right in contract and at common law to receive full compensation for their losses before GHO may seek reimbursement of its payments for Coon's medical expenses. The Coons' situation is analogous to that of every injured party who makes a calculated decision based on the risks of litigation to accept a settlement. We decline the invitation to upset almost four decades of insurance law in Washington State recognizing the wisdom and fairness of the

"made whole" principle. We reverse the superior court order granting summary judgment to GHO and remand for further proceedings to determine, as a question of fact, whether the Coons have been fully compensated for their damages.

> B. An Insurer Is Required To Prove That It Was Prejudiced before It Can Assert Any Reimbursement Rights Based on an Insured's Breach of Contract

Separate from the question of the applicability of the "made whole" rule, we must address GHO's argument that the Coons forfeited their rights under the insurance contract by breaching the contract. In an order denying the Coons' motion for summary judgment, the superior court found that the "Defendants breached their duties under their contract with Plaintiff" by failing to notify GHO prior to acceptance of a settlement. CP at 516 (Order Den. Defs.' Mot. for Summ. J.). GHO contends that, because of this breach, GHO is entitled, per the contract language, to full reimbursement as a matter of law. CP at 402. This is incorrect.

"It may be a peculiarity of insurance law, or a variant of general contract law, but not every breach discharges performance by the other party." *Pilgrim v. State Farm Fire & Cas. Ins. Co.*, 89 Wn. App. 712, 724, 950 P.2d 479 (1997). As this court explained in *Tripp*, "[W]hile failure to give notice of settlement is a breach of the policy, it gives rise to a remedy only if the insurer is prejudiced by the lack of notice." 144 Wn.2d at 16. The burden of proof is on the insurer to demonstrate that it was prejudiced. *Or. Auto. Ins. Co. v. Salzberg*, 85 Wn.2d 372, 376, 535 P.2d 816

(1975). "To establish prejudice, the insurer must show 'concrete detriment . . . together with some specific harm to the insurer caused thereby.'" *Pilgrim*, 89 Wn. App. at 724-25 (alteration in original) (quoting *Canron, Inc. v. Fed. Ins. Co.*, 82 Wn. App. 480, 487, 918 P.2d 937 (1996)). Determining prejudice from a policy breach is a question of fact for the jury and "will seldom be established as a matter of law." *Dien Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 228, 961 P.2d 358 (1998).

Throughout the summary judgment proceedings, GHO did not offer any evidence of prejudice, CP at 389-407, but instead maintained that no showing of prejudice was required because the public policy considerations present in *Tripp* were not at issue. Pet. for Review at 19. GHO relies on *Tran* and *Pilgrim* to support its argument, but these cases compel the opposite conclusion. *Tran*, 136 Wn.2d at 217; *Pilgrim*, 89 Wn. App. at 714. Both *Tran* and *Pilgrim* involved allegations of insurance fraud, and the court not only analyzed the issue of prejudice but specifically found that the insurer had been prejudiced as a matter of law. *Tran*, 136 Wn.2d at 231 ("Tran's refusal to submit the requested financial information, an act which breached the cooperation clause and impeded State Farm's ability to investigate the claim, caused prejudice."); *Pilgrim*, 89 Wn. App. at 725 ("The Pilgrims' refusal to disclose relevant financial information prejudiced State Farm as a matter of law."). The Court of Appeals explained in *Pilgrim*, "In Washington,

however, the rule is well established. In every cooperation clause, notice clause, and 'no settlement clause' case, where the prejudice issue has been raised, the court *has* analyzed prejudice." 89 Wn. App. at 723. Consistent with these cases and our long-standing precedent, we reiterate that an insurer is entitled to relief based on an insured's breach of contract only if, and to the extent, it can demonstrate prejudice resulting from the breach.

Here, questions of fact exist regarding whether GHO was prejudiced by the Coons' failure to provide notice prior to finalizing the TEC settlement. By its own admission, GHO was advised by the Coons' attorney that the Coons would be proceeding to mediation with TEC. CP at 405. GHO was also advised when the mediation was postponed. *Id.* While GHO was not consulted prior to acceptance of the final settlement, it offered no evidence of prejudice that resulted from this failure to consult. CP at 389-402. Importantly, there was no evidence that informing GHO of the Coons' intent to enter into the settlement on Friday would have altered the parties' disagreement about the "made whole" rule. Nor did GHO offer evidence that it could have done anything to obtain a greater settlement had it been timely notified. It may be that evidence of prejudice was not produced in light of the superior court's ruling, and therefore, further proceedings are warranted. In accordance with *Tripp*, GHO bears the burden to prove it was prejudiced by the

Coons' failure to notify prior to acceptance of the TEC settlement, and any remedy is limited to the extent of established prejudice. 144 Wn.2d at 16.

## CONCLUSION

The superior court wrongly granted GHO's motion for summary judgment and erred when it concluded that acceptance of a settlement under policy limits created a presumption that the Coons were "made whole" as a matter of law. Because the Coons had a contractual and common law right to receive their full measure of damages before reimbursing GHO and they put forth substantial evidence that they were not "made whole," further proceedings are necessary on this issue. Additionally, GHO cannot avoid its reimbursement obligations as a result of the Coons' contract breach unless it proves that it was prejudiced by the Coons' failure to provide notice prior to settling their tort claims against TEC. We affirm the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

_Stephens, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Madsen, J._

_Owens, J._

_Wiggins, J._

_González, J._

_Gordon McCloud, J._

_Yu, J._